Hope A. BURDICK, Appellant,

v.

YORK OIL COMPANY, Inc., et al., Appellees.

No. 13994.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 23, 1963.

Rehearing Denied Feb. 20, 1963.

Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, Carsner, Carsner & Larsen, Victoria, for appellant.

Guittard & Henderson, Victoria, Butler, Binion, Rice & Cook, Tom Alexander, Houston, for appellees.

POPE, Justice.

This is a personal injury case. The jury answered all issues against the plaintiff, Hope A. Burdick, and he has appealed. The case must be reversed upon the points which complain that Mr. Tom Alexander, attorney for the defendant York Oil Company, Inc., saturated the record with harmful and excluded evidence.

Plaintiff sued for damages to his neck suffered in a collision when the driver of York Oil Company's car ran into the rear of plaintiff's car. There was evidence which would support a verdict either way. The trial lasted two weeks and the statement of facts consists of 1,196 pages, which we have read. The points complain that defense counsel thrust many improper subjects into this trial before a jury. For illustrative purposes, we shall discuss only one of the improper subjects in detail. This will show the pattern for the trial which resulted in a pyrrhic victory for the defendants.

Before the court began hearing evidence, plaintiff made a motion in limine to exclude matters contained in the Veterans Administration Records. The court excluded the records because defendants failed to overcome the requirements of the federal statute. 38 U.S.C.A. § 3301; Turners, Inc. v. Klaus, Tex.Civ.App., 341 S.W.2d 182; Kassow v. Robertson, Ohio Com.Pl., 143 N.E.2d 926; McLaughlin v. Massachusetts Indemnity Ins. Co., 85 Ohio App. 511, 84 N.E.2d 114. In spite of that decision defense counsel commenced a studied and successful course of questioning about those records. He repeatedly criticized the privilege and charged the plaintiff with concealing matters from the jury. The effect was that the protection of the privilege was destroyed. This was accomplished, not by indirection or an inadvertent mistake; it was the calculated theory of trial.

Defense counsel while cross-examining the first witness, turned to the court room and addressed the custodian of the Veterans Administration records and said, "I am going to ask Mr. Montemayor from the Veterans Administration to hold up that sheaf of records on Hope Burdick." The court ordered the remark stricken. Counsel then asked the witness, "Suppose though, Doctor, that the history was from the Veterans Administration records that this was a man that shot himself in the leg twice in the service." Upon objection, counsel volunteered the statement, "I certainly intend to show by the Veterans Administration records and by Mr. Burdick himself he was under indictment." This later proved to be a false statement. Counsel continued, "The doctor has testified by reference to the Veterans Administration records he could have gotten the complete history of this patient and I submit that this is admissible testimony and material testimony." He again asked the witness, " * * * wouldn't it have been important for you to consult and read the Veterans Administration records and file in this case?" When plaintiff again invoked the federal privilege statute, counsel incorrectly stated that there was no such statute and said, "If Mr. Burdick and his lawyers would give you permission you can sit here during the noon hour and read through those Veterans Administration records. If they give you that permission will

you do that?" Objections were again sustained.

After the noon recess of the first day, defense counsel called Mr. Montemayor out of order. He is an attorney for the Veterans Administration. The records were again excluded, after which counsel began a series of questions such as: "Have you appeared with Veterans Records and testified in courts before?" "On prior occasions when you have testified, have those records been admitted?" "And have you ever had before, in your experience in introducing those records into evidence, have you ever had the attorneys for the plaintiff refuse to give consent to have those records admitted before the jury?" "You understand as an attorney and as an officer of the Veterans Administration that there would be no question about admitting these records before the jury?" "You do understand here the reason that these records have not been admitted to this jury is because the plaintiff's attorney refuses to allow the jury to see these records?" When excluded, defense counsel moved the court "to give its instruction as to why the jury should disregard it, that it was because of the plaintiff's objections." Counsel emphasized the point by asking the court, "May the court please, so that I can understand the rulings of the court, would the court please state its ruling as to why these records were not admitted?" After sustaining objections, counsel asked, "Now Mr. Montemayor, you and your superiors in the Veterans Administration have no objection and made no objection to the introduction of these records into evidence, have you?" The court permitted the witness to answer "No."

Counsel asked the plaintiff on the third day of trial, "You know, don't you, all we need to get the whole Veterans Administration file in evidence is your consent? Will you consent putting that file in evidence so that the matter can be straightened up before the jury and the court?" When the privilege was again claimed, counsel stated, "There is no law that says he can't consent to admit these records." He continued, "The privilege is this witness' and this witness' alone. This witness has not claimed his privilege, just his lawyer has. This man is entitled to be asked whether he wants to waive * * *." He pursued it even further and said, "I am going to ask him as to his cause for claiming his privilege. Now then, Mr. Burdick, before your lawyers decided to claim your privilege for you, did they confer with you?" After a negative answer, counsel asked, "They did it because they have seen the records, isn't that right?" Counsel then questioned the plaintiff about other matters and in doing so referred to the defendant as an individual instead of the corporate defendant. Upon an objection that this would mislead the jury, defense counsel, without warning, commented, "I am not the one that kept the records out and I don't intend to mislead this jury in any way." The court instructed the jury to disregard these comments of counsel, and three pages later the record shows that counsel again asked, "As a matter of fact, in the Veterans Administration records there are reports from your private doctors, aren't there?" He followed this by asking, "You certainly know the easy way for us and all the jurors to find out about what is in there don't you?"

Plaintiff's attorney was examining Mrs. Burdick on the sixth day after trial began. He questioned her about her husband's physical condition before the accident, and particularly about a gun-shot wound he had received in Denver. Defense counsel objected to the words of a question by saying, "I object that the phrase 'and whatever inferences may or may not be drawn from it,' and point out to the court that they have refused to allow these Veterans Records into evidence." On the seventh day, while Burdick was again on the stand, defense counsel offered the records of the Department of Public Safety to show plaintiff's accident record. When plaintiff objected, defense counsel responded, "They are not about to invoke a personal privilege on that record. It is a

record of a Department of this State." The court ordered the remark stricken. On the eighth day counsel again, in the presence of the jury, offered the complete records of the Veterans Administration and said "What I am interested in is getting all the facts before the jury." On the ninth day of the trial, counsel called a court reporter to testify about a statement Mr. Burdick had given while in the hospital. Without warning, he asked, "Are you familiar with the situation in which a plaintiff or his lawyer withdraw their consent so that those records can't be introduced into evidence, especially in connection with Veterans Administration records?" The court sustained an objection, but counsel's next statement was, "I would like to offer the medical portions of the Veterans Records." The court again sustained an objection, but counsel persisted by saying, "May the court please, they have the right to change their mind at any time and withdraw the privilege they have claimed." The remark was stricken.

The case was argued on Monday of the third week after trial began. Still ignoring the court's over-patient and numerous orders, counsel argued, "Ladies and Gentlemen, these things I say to you about matters that have been objected to and kept out of the record, I don't mean to say it is positive evidence those things happened, but you Ladies and Gentlemen, as you can read from the Court's charge, are entitled to consider also circumstantial evidence and to draw whatever reasonable inferences you can draw from the evidence that is in the record." Plaintiff had argued that this was his last day in court on the case, and by way of reply, defense counsel argued, "It is certainly not his first. * * * They have kept the Veterans Administration records out and now they are talking about what is in them and they will reflect that." "Do you want to let the Veterans Records in? He has been in court more than one day and if you want to put the records in, put them in." Objections were sustained. Counsel then crowned all his former disregard for

the rules of evidence and the court's rulings, by arguing:

"Ladies and Gentlemen, in that regard I have a peculiar advantage over you because I know what is in those Veterans records and I know why he has taken that position about them because he knows he can keep them out."

"The reason they are not in this record is because of personal privilege like the Fifth Amendment has been invoked here."

"The law says when you invoke a personal privilege or take the Fifth Amendment the jury is entitled to hear the person invoking such privilege take the stand and so state."

"You know when a man takes the Fifth Amendment, the jury is entitled to hear him take the Fifth Amendment."

We have detailed thirty-eight times that counsel disregarded the court's rulings and instructions. He did it in the form of factual statements, suggestive or repetitious questions, argument to the court, side-bar remarks, and jury argument. They included criticisms of the plaintiff for claiming the privilege, his counsel, the court, and the rule of law. It began with the first witness and continued through the argument.

■ Briefly, we shall show a similar technique concerning the skillful injection of insurance into the record. Defense counsel, during the voir dire, asked about former claims by any of the panel members. One juror related some storm damage claims. Counsel stated to the jury, he was not interested in storm damages for "that is an insurance matter." Plaintiff objected because it suggested the absence of insurance, which is as bad as the suggestion by a plaintiff that there is insurance. Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962. Later in the trial, defense counsel was questioning plaintiff and asked him when he hired a lawyer. Plaintiff replied that it was when a man from a "claims bureau" came

to see him in the hospital. Defense counsel moved for a mistrial, which the court denied because, among other reasons, he induced the answer. Counsel then pursued his question and openly thrust insurance into the case by the question, "And that man told you at that time, that he would pay you the full insurance that Mr. Figueroa (the driver), and Mr. York had in this case in the amount of five thousand dollars, didn't he?" It is no pleasure for us to do so, but it is necessary that we record not only that it was defense counsel who injected insurance into the case, but also that his irregular statement that the policy was limited to $5,000.00 was untrue. He argued to the jury that settling lawsuits ran up insurance rates. By the time the case was completed, counsel had jammed the record with evidence of prior claims and settlements for personal injuries, plaintiff's Workmen's Compensation, Blue Cross, possible pension rights, negotiations and offers to settle, and former fire losses and settlements. By the end of the trial, what was supposed to be out of the record, was neither in nor out. In this case, there is harmful error in good measure, pressed down, shaken together and running over.

As justification for this conduct, counsel points to some improper acts of the plaintiff's attorney. Plaintiff's counsel improperly told the court that defense counsel had twice been threatened with a jail sentence by judges in Houston. Defense counsel denied the statement. This was outside the presence of the jury. Another time plaintiff's counsel objected to defense counsel's efforts to "mislead the jury." Plaintiff's counsel on one occasion compared defense counsel's tactics to Kruschev. Plaintiff's counsel never again mentioned Kruschev, but defense counsel magnified it by mentioning it on four other occasions. We condemn the remark, but its presence in the record does not purify the record.

 A motion in limine to exclude anticipated evidence may be presented to the court. The practice is approved in Ford v. Carpenter, 147 Tex. 447, 216 S.W. 2d 558, 560, overruled on other points in Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277. When the court has ruled on a point, the same evidence should not again be offered in the presence of the jury. In re Boultinghouse's Estate, Tex. Civ.App., 267 S.W.2d 614, 620; Sherwood v. Murray, Tex.Civ.App., 233 S.W.2d 879, 883; St. Louis, S. F. & T. R. Co. v. Knowles, 44 Tex.Civ.App. 172, 99 S.W. 867. Counsel may, so long as the judge permits, urge upon the court, out of the hearing of the jury, the correctness of his position. The presentation of excluded matter to the jury by suggestion, by the wording of a question, or by indirection, violates professional standards and counsel's duty to the court. Canon 19, State Bar Rules, 1A Vernon's Tex.Civ.Stats., p. 236. Matters excluded by reason of a lawful privilege are governed by the same rules. Having claimed it, one need not see it frittered away by repetitious re-offers of the same evidence or by questions calling upon the claimant to justify his reasons for invoking the privilege. Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291; McLaughlin v. Massachusetts Indemnity Ins. Co., 85 Ohio App. 511, 84 N.E.2d 114; 116 A.L.R. 1170; accord, Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244. There is a duty upon the court to rule decisively. McLellan v. Brownsville Land & Irrigation Co., 46 Tex.Civ.App. 249, 103 S.W. 206. When error creeps into the record, the court should instruct the jury to disregard it. Lucas v. Alsmeyer, Tex.Civ.App., 322 S.W.2d 19. The judge must do more. He must enforce his rulings. Violations of a court's solemn rulings should "lead to serious consequences." Ford v. Carpenter, supra. Counsel's and the court's attention is invited to Rule 269(g), Texas Rules of Civil Procedure.

The judgment of the trial court is reversed and the cause remanded.