(No. 37476.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* WILLIAM N. RUSSELL *et al.,*—(MORTIMER SINGER *et al.,* Appellees.)

*Opinion filed September 27, 1963.*

WILLIAM G. CLARK, Attorney General, of Springfield, (HAROLD G. ANDREWS and RICHARD E. QUINN, Special Assistant Attorneys General, of counsel,) for appellant.

SNYDER, CLARKE, DALZIEL, HOLMQUIST & JOHNSON, of Waukegan, (GERALD C. SNYDER, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from an order entered in the circuit court of Lake County setting aside verdicts of a jury awarding compensation in a condemnation case and granting a new trial. Petition for leave to appeal pursuant to section 77(2) of the Civil Practice Act (Ill. Rev. Stat. 1961, chap. 110, par. 77(2) and Rule 30 of the Supreme Court, has been granted.

The property involved is located on Skokie Highway, U.S. Route 41, in the city of Highland Park, Lake County, Illinois. The total holdings of the respondents consisted of approximately 49 acres of land on the easterly side of Skokie Highway. Tract No. 6, one of the parcels to be acquired in these proceedings, is an irregularly shaped parcel of land containing 3.827 acres. Tract No. 6A, another parcel to be acquired, consists of a strip of land 17 feet wide by about 280 feet long, containing about $\frac{1}{10}$ of an acre.

The purpose of the taking was for the improvement known as the Deerfield Road—Skokie Highway Overpass, a cloverleaf type traffic interchange. The subject property is located at the northerly extremity of this highway improvement.

The land was vacant at the time of the filing of the petition to condemn on March 17, 1960. It was zoned under the zoning ordinance of the city of Highland Park in the A District, which provides for three-acre minimum lot size and residential uses, but on May 4, 1959, prior to the filing

of the condemnation petition, the city council of Highland Park adopted an ordinance which granted a special permit to the Singers for the construction of a shopping center on that part of subject properties laying north of West Park Avenue.

The subject properties are adjoined on the north by the sanitary land fill and garbage dump operated by the city of Highland Park. The East Skokie drainage ditch flowed through the subject properties near their eastern border. The properties were adjoined by vacant lands to the east, both north and south of West Park Avenue.

Petitioner's three real-estate experts valued tract 6 from $36,500 to $38,500, and tract 6A from $1,000 to $1,200, and considered no damage to the remainder. The respondent property owners adduced the opinion of three witnesses who testified that the highest and best use of the premises was for a shopping center, and that tract 6 had a value of $250,000 and damage to the remainder would be $250,000. Respondents' evidence of the value of tract 6A was $7,158.

The jury returned verdicts awarding respondents $72,-100.59 for tract 6 and $2,298.45 for tract 6A, and nothing for damage to the remainder of tract 6. The respondents filed a post-trial motion for a new trial, basing their motion on the grounds that counsel for petitioner was guilty of prejudicial misconduct which deprived respondents of a fair trial, and that the verdicts are contrary to the weight of the evidence.

On August 3, 1962, the trial judge entered an order allowing the motion for a new trial, and petitioner filed petition for leave to appeal, which we have granted.

On December 13, 1962, the trial judge filed a memorandum of decision in support of his order granting a new trial. The memorandum, incorporated in the record, stated in part as follows:

"1. Counsel for the Petitioner made repeated demonstrations before the jury throughout the trial of this case, challenging the rulings of the Court by gestures, by

uttering comments, by long pauses with a purported amazed look on his face following an adverse ruling by the Court, by commenting in a loud voice to the jury 'what's going on here,' when the Court sustained an objection to Respondents' Counsel's questions, by shaking papers as a protest in demonstrating after an adverse ruling by the Court, by walking back and forth in an excited and protesting manner after adverse rulings by the Court.

"2. Petitioner's Counsel, during the entire three days of the trial, conducted himself in the manner which made it very difficult for the Court to properly conduct the trial in a fair and impartial manner. And the Court on a number of occasions, outside of the presence of the jury, instructed the Counsel for the Petitioner that he should refrain from the conduct discussed. However, he refused to comply with the Court's request.

"3. Counsel for the Petitioner repeatedly directed a personal attack upon the Counsel for the Respondent, challenging his motives in securing the passing of a zoning ordinance, charging that he purchased the property knowing it would become involved in condemnation proceedings. And in his argument to the jury after the Court had sustained an objection to certain argument, he picked up a paper from counsel table and read same to the jury, over the objections of Counsel for the Respondent, and over the rulings of the Court, which was highly prejudicial.

"Due to the conduct of Counsel, and the constant ruling of the Court, I am of the opinion that the Respondents did not receive a fair and impartial trial in this case, and that the motion for a new trial heretofore filed is granted."

Petitioner recognizes that a reviewing court will not reverse a decision of a trial court granting a new trial unless a clear abuse of discretion is affirmatively shown. However,

petitioner insists that no proper ground exists for granting a new trial in this case.

We have examined the entire record and find that the trial was marked by intemperate and unfortunate exchanges between both counsel and between petitioner's counsel and the court. Petitioner indeed claims that the trial judge displayed "manifest hostility," and continually reprimanded counsel for petitioner. Petitioner insists in its brief on this appeal that "the trial judge consistently took the opportunity to admonish and embarrass Counsel for Petitioner, * * * even intimating to the jury that Council for Petitioner was making 'false statements'."

Petitioner, therefore, attempts to defend the remarks of trial counsel on the ground that they "were in defense of himself and retaliatory to the joint remarks made on his person," by the trial judge and respondent's attorney. Petitioner defends the "gestures" and "amazed looks" of counsel on the ground that "some of the rulings and remarks of the trial judge appear to Petitioner to be most unusual and confusing."

Respondents also recognize that continuous controversy existed between the trial court and petitioner's counsel. However, respondents insist that the controversy arose because of the behavior of petitioner's counsel.

In final argument petitioner's counsel stated that respondents sat with the property "because they knew that there was a condemnation coming." An objection to this argument was sustained because it was unsupported by the evidence. The subsequent interchange between petitioner's counsel and the court reached a point where the trial judge stated to petitioner's counsel, in the presence of the jury, "let the jury decide who is making false statements here— the Court or you." Thereafter petitioner's counsel, in conclusion stated, "One side in here is honest and one side is telling the truth, and one side is not."

The acrimony present in the courtroom has not lessened

before us, and the briefs of the parties are excessively vituperative.

We are reluctant to set aside a condemnation award which is well within the range of the testimony. However, the issue here is not whether the evidence sustains the verdict of the jury, but whether, on this record, the trial court abused his discretion in determining that the conduct of counsel at the trial deprived the respondents of a fair trial.

We think the remarks of petitioner's counsel inferring that respondents purchased the property and obtained a special zoning permit "because they knew that there was a condemnation coming," were unsupported by the evidence and were improper. In addition, it appears from the record that counsel exceeded propriety in questioning the court's rulings on the evidence. We would be inclined to think that these matters, standing alone, would not justify the granting of a new trial. However, they were amplified by unfortunate clashes between the court and petitioner's counsel which are apparent from the record.

Much of the conduct of counsel criticized by the trial court in its memorandum is of such a nature that it could not appear in the cold record before us. We, therefore, cannot, nor need we, assess the blame for the lack of judicial atmosphere evidenced by the record. Nor can we weigh the effect of these clashes upon the jury.

The issue, as we have suggested, is not whether we would set aside the verdicts upon the record before us. It is rather whether the record shows that the trial judge abused his discretion in granting a new trial. It is apparent that the interchanges between court and counsel exceeded the bounds of propriety, and created an atmosphere pregnant with partiality and bias. We cannot say that the trial judge was in error in determining that the cumulative effect of all of the events during the course of the trial deprived respondents of a fair and impartial trial. We, therefore, affirm the trial court.

*Order affirmed.*