BERTHA REIDELBERGER, Indiv. and as Adm'x of the Estate of Terry M. Reidelberger, Deceased, Plaintiff-Appellee, v. HIGHLAND BODY SHOP, INC., Defendant-Appellant.

Fifth District   No. 78-433

Opinion filed December 27, 1979.

KASSERMAN, J., dissenting.

James E. Gorman, of Reed, Armstrong, Gorman and Coffey, of Edwardsville, for appellant.

John Dale Stobbs, of Stobbs Law Offices, Ltd., of Alton, for appellee.

Mme JUSTICE SPOMER delivered the opinion of the court:

The plaintiff's 17-year-old son, Terry Reidelberger, was killed in a single-car accident when the automobile he was driving went out of control after passing another vehicle, left the highway, crashed into a ditch, rolled over, and came to rest in a cornfield. His mother's action in the Circuit Court of Madison County sought money damages from the Highland Body Shop, where repairs to the car had been performed some three months prior to the accident. The complaint, which contained counts sounding in breach of warranty and strict tort liability, alleged that the defendant had placed a used, bent axle shaft in the vehicle, which affected its stability, and that this dangerously defective condition was a proximate cause of the death of the plaintiff's son.

A jury trial ended in a verdict for the defendant. The trial court granted the plaintiff's motion for a new trial, finding that repeated violations of an *in limine* order and other directions of the court during the course of trial by the defendant's attorney had deprived the plaintiff of a fair trial. We allowed the defendant's petition for leave to appeal, and we now reverse.

■■ As we stated recently in *Bradley v. Caterpillar Tractor Company* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825, what we must determine on an appeal from an order granting a new trial is whether the jury's verdict was supported by the evidence and whether the losing party was deprived of a fair trial. The granting of a new trial merely because the trial court would have reached a different result, where there is evidence to support the jury's verdict and no showing that the losing party did not receive a fair trial, is an abuse of judicial discretion. See *Bradley v. Caterpillar Tractor Company* (1979), 75 Ill. App. 3d 890, 892-93, 394 N.E.2d 825, 827-28, and cases cited therein.

■■■ We need not here review at any great length the evidence adduced by the parties, and there is no question as to the sufficiency of the evidence. The defendant's evidence, if believed, tended to prove that the crookedness of the axle shaft did not pre-exist, but in fact was a result of, the crash, and that the actions of Terry Reidelberger himself were the sole proximate cause of his death. Resolution of the question of proximate cause is the function of the jury as trier of fact. (*Bradley v. Caterpillar*

*Tractor Co.; Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 369 N.E.2d 1284, *affirmed in part and reversed in part on other grounds* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) There was ample evidence before the jury to support the conclusion that the condition of the axle shaft was not a proximate cause of the decedent's death. The question before us then becomes whether the alleged violations of the *in limine* order, or other misconduct by defense counsel, operated in such a prejudicial manner as to deprive the plaintiff of her right to a fair trial by jury.

During pretrial discovery, plaintiff's counsel determined that it was likely that it would be suggested to the jury at trial that the decedent and some young people in another vehicle had been passing each other and other vehicles at high rates of speed shortly before the accident. Taking the position that presentation to the jury of any such information, which would have little or no probative value as to the legitimate issues in the case, would unfairly prejudice the plaintiff, counsel filed a motion *in limine* seeking to exclude these extraneous matters. After a hearing, the motion was granted to the extent of directing the defense not to refer in any manner, without prior permission from the court, to (1) the purported speeds of the decedent's vehicle and the vehicle passed by the decedent some two miles from the scene of the accident, (2) the purported movements of the decedent's vehicle in the Grant Fork Turns some five miles from the scene, and (3) a purported statement of Ellen Niggli, the surviving passenger in the Reidelberger vehicle, to the officer who investigated the accident.

Immediately prior to the trial, the plaintiff filed another motion *in limine,* asking that the defendant be prohibited from mentioning the speed of the decedent's automobile at the time of the accident. In support of the motion, counsel argued that testimony as to speed would inject the issue of contributory negligence, immaterial in a strict-tort-liability case. This motion was denied, the court ruling as follows:

> "\* \* \* [E]ach side is entitled to present his own theory of the case; that as I understand it, Mr. Gorman's [defense counsel] theory is the bent axle was caused by the impact, and one of the related factors was the speed, whatever it is, was of such force that would cause an axle to be bent in that fashion. I think that's admissible. I am going to allow him to make an opening statement the way he wants it."

Also prior to opening statements, defense counsel obtained a ruling from the court that it would be permissible to ask Miss Niggli how the decedent had been driving prior to the accident. Before opening statements, the court instructed the jury for the second time that what the attorneys said in opening statements was not to be considered by them as evidence in the case.

The first controversy about the scope of the limitations to be placed on the defense occurred during defense counsel's opening statements. During that statement, he told the jury:

> "* * * The evidence will show there were two cars there at the scene of the accident. These two cars had been, for want of a better term, leapfrogging down the highway. They left the Grant Fork area, and there were four or five young men in the second car; two young girls and Terry Reidelberger in the other car. If I can recall the sequence * * * but first there is another witness named Dean Saathoff, and his wife, who was riding with him, but at one point, if I can remember the sequence, but the boys said they came up on the Reidelberger car. They tried to pass it about * * *."

At this point, plaintiff's counsel objected, claiming a violation of the *in limine* order. After a conference in chambers, during which the court determined that the "leapfrogging" referred to events which occurred a mile or two from the scene of the accident, the court sustained the objection but denied a motion for a mistrial. The mistrial motion was renewed at the close of defense counsel's opening statement. The plaintiff contended that the issue of contributory negligence had been injected into the case. This motion was also denied.

The judge who presided at trial was not the same one who had entered the pretrial *in limine* order. During the course of the plaintiff's case, the trial judge attempted to explain further the scope of the order, as follows:

> "* * * [Y]ou may be mistaken as to what my limitations are. I think you can have testimony regarding the movement of the car prior to this accident in that it was normal, abnormal, or whatever. What I am limiting you to is the speed of the automobile a mile or two down the road. I think when you get in the immediate vicinity of the accident, half a mile, I think the testimony of the speed is good. But as to the movement of the car and the actions of the car a mile or two or three or four miles down the road, I think it's alright."

The court's order granting a new trial stated in pertinent part as follows:

> "This order [the *in limine* order] was directly violated by the defendant in his opening statement when he referred to the plaintiff's leap-frogging movements not at the scene of the accident. In chambers, it was once again made clear to the defendant that speeds and movement of the car not at the scene of the accident were inadmissible. Subsequent to the conference in chambers the order was violated by the defendant with respect to witness Loyet, witness Niggli, witness Strohbeck, witness Stumpf,

and witness Saathoff. Due to the repeated violations of the motion *in limine* and the court's direction in chambers, the prejudicial impact on the jury was such that it was impossible for the plaintiff to receive a fair trial."

After a careful consideration of the entire record before us, we must conclude that plaintiff was not denied a fair trial by the alleged instances of violations of the *in limine* order and the court's directions to counsel, nor by the other alleged misconduct by defense counsel raised here in the plaintiff's brief. We do not think that it is at all clear, as the trial court found, that the reference to "leapfrogging" a mile or two from the scene of the accident was a direct violation of the *in limine* order. The only purported movements of the decedent's vehicle barred by that order were movements in the Grant Fork Turns area, about five miles from the scene. The "leapfrogging" supposedly took place a mile or two from the scene of the accident. Counsel could not reasonably have been expected to know that the trial judge would consider his statement a violation of the *in limine* order. Nor is it quite accurate to state, as the trial court's order does, that it was *"once again* made clear to the defendant that speeds and movement of the car not at the scene of the accident were inadmissible" during the conference in chambers. Prior to that conference, the only limitations pertained to speed two miles from the scene of the accident and movements five miles from the scene of the accident. In fact, in the court's subsequent attempt to clarify the limitations, it was stated that testimony as to speed within half a mile of the accident scene was admissible.

Our examination of the testimony of the witnesses named by the court in its order do not reveal to us any such clear and repeated violations of the *in limine* order or the court's directions to warrant the finding that it was impossible for the plaintiff to receive a fair trial. During cross-examination of the investigating officer, Trooper Loyet, defense counsel asked whether he had spoken to Miss Niggli at the hospital following the accident. An objection to this question was overruled, and no attempt was made to determine what, if anything, she said to the trooper. A question asked the trooper as to the subject of his discussion with Michael Stumpf was also sustained. We do not think that these questions prejudiced the jury.

During the cross-examination of witness Strohbeck, one of the passengers in the Stumpf car, the following exchange occurred:

"Q. Mr. Stobbs asked if there were any cars in the area before and you said that there were none coming * * * where was this first car that came up, that you noticed coming from the scene, from what direction?

A. We passed them back more near Grant Fork Corners. We knew they were back there.

Q. And that was about how far from the place of the accident?

A. When we passed the cars?

Q. Yes.

A. I don't know, three or four miles back from where the accident happened, where the Grant Fork Corners Are.

MR. STOBBS: The court has previously ruled that anything that transpired * * * we are talking about something else, but I think the point is it is not really relevant.

MR. GORMAN: It is, Your Honor, as to the first car on the scene.

THE COURT: So.

MR. GORMAN: He now gives it as the reason they * * *

THE COURT: Let's move on."

Again, we cannot see how this exchange could have prejudiced the plaintiff.

During defense counsel's cross-examination of Ellen Niggli, the following exchange occurred:

"Q. Just before this accident happened, was there * * * taking it not as any fooling around in the car between the guys and the girls, but regarding the driving, was there any fooling around?

A. Not that I know of.

Q. Where you trying to catch up to the Stumpf car?

A. Not that I know of. I remember waving to the Stumpf car.

Q. And when were you waving to the Stumpf car?

A. I have no idea.

Q. As to this accident, did you tell Mike Stumpf you were trying to catch up to him to wave to him?

A. I didn't see Mike Stumpf for maybe six months later.

Q. Regardless of when you saw him.

A. No.

Q. You don't remember anything like that?

A. No.

Q. At this time on that, your recollection just is that you were waving to Mike Stumpf's car, but you don't know when that occurred?

A. No.

Q. Did you know the people in the other car?

A. I knew Mike. I knew him, his car for sure."

Again, we see nothing in this exchange which could have prejudiced the plaintiff.

During defense counsel's direct examination of Michael Stumpf, he asked whether Stumpf had passed the vehicle near an overpass some two miles from the scene of the accident. An objection to this question was promptly sustained.

During defense counsel's examination of Sue Saathoff, the passenger

in the vehicle which first came upon the accident after the Stumpf car, the following exchange occurred:

"Now had, * * * did the car that you saw in the field, had you seen it at any time earlier?

MR. STOBBS: Objection, Your Honor, irrelevant.

MR. GORMAN: This is just identity of the car.

MR. STOBBS: Not fixed at the place, time.

THE COURT: You will have to specify what period.

MR. GORMAN: Back at the overpass of 270, did any vehicle pass you going in a southerly direction * * *

MR. STOBBS: Objection.

THE COURT: Sustained.

MR. GORMAN: That would be all I have, except I would make an offer of proof.

THE COURT: Any cross-examination?

MR. STOBBS: No questions. Thank you, Mrs. Saathoff.

THE COURT: Next witness.

MR. GORMAN: Your Honor, on the offer of proof, should we make it now with the witness here. I know what she would testify, but he would have to agree as to form * * *."

The question as to whether any vehicles passed Mrs. Saathoff at the 270 overpass, which was a mile or two from the scene of the accident, was at least arguably in violation of the *in limine* order as modified during trial. However, in light of the prompt sustaining of the objection, the prejudicial impact was minimal.

■■■ Viewing the instances of alleged misconduct in the context of this entire lengthy proceeding, we conclude that defense counsel's actions did not deprive the plaintiff of a fair trial. There is no indication in the briefs or record before us that any improprieties occurred in closing argument, nor that the jury was not properly instructed. The parties are not entitled to a perfect trial, only a fair trial. We think the instant trial was relatively free from error. For violations of an *in limine* order to serve as the basis for a new trial, the order must be specific in its prohibitions and violations must be clear. We do not think that either requirement was met here.

For the foregoing reasons, we conclude that the trial court abused its discretion in granting the motion for a new trial. The order of the Circuit Court of Madison County granting a new trial is therefore reversed and the jury verdict is reinstated.

Reversed.

KARNS, J., concurs.

Mr. JUSTICE KASSERMAN, dissenting:

I cannot agree with the majority for the reason that I find no evidence that the trial court abused its discretion in granting plaintiff's motion for a new trial.

It is my opinion that the case of *Kerns v. Lenox Machine Co.* (1979), 74 Ill. App. 3d 194, 392 N.E.2d 688, is controlling. As stated in *Kerns*: "The issue on review is generally whether the trial court abused its discretion in granting plaintiff a new trial. The decision on a motion for a new trial is a matter of sound judicial discretion. (*Brown v. Johnson* (1978), 60 Ill. App. 3d 76, 378 N.E.2d 757.) A reviewing court will not reverse an order granting a new trial unless a clear abuse of discretion is affirmatively shown. (*Department of Public Works & Buildings v. Russell* (1963), 28 Ill. 2d 491, 192 N.E.2d 900.)" *Kerns v. Lenox Machine Co.* (1979), 74 Ill. App. 3d 194, 196, 392 N.E.2d 688, 690.

The majority relies on a recent decision of this court in *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825, in reaching its decision and concludes that where there is evidence to support the jury's verdict and no showing that the losing party did not receive a fair trial, it is an abuse of judicial discretion for the trial court to grant a motion for a new trial. What the majority has failed to recognize is that, as this court stated in *Bradley*:

> "Courts of review will not disturb such an order [trial court's order granting a motion for a new trial] unless there is an affirmative showing of a clear abuse of discretion on the part of the trial court. [Citation.] The reason behind this well-settled rule is the trial court's superior opportunity to observe alleged errors in the context of the trial as a whole and to determine whether the trial was fair to all parties and whether substantial justice was accomplished. [Citation.]" *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 892-93, 394 N.E.2d 825, 827.

It is conclusively established that contributory negligence of a plaintiff will not bar his recovery in a products liability case. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Kerns v. Lenox Machine Co.*) It is my opinion, considering the totality of the trial, that the element of decedent's contributory negligence was improperly injected into the instant case.

The trial court in granting plaintiff's motion for a new trial recognized that the thrust of defendant's evidence sought to be excluded by the motion *in limine* was the fact that decedent was operating his automobile improperly in areas remote from the locality where his death occurred. In its order granting plaintiff's motion for a new trial, the court found "due to the repeated violations of the motion *in limine* and the court's direction in chambers, the prejudicial impact upon the jury was such that it was

impossible for the plaintiff to receive a fair trial." Not only did the trial court not abuse its judicial discretion, it correctly perceived the prejudicial effect of the jury being subjected to improper inferences and innuendoes concerning contributory negligence on the part of the decedent.

For the foregoing reasons, I would affirm the order of the circuit court of Madison County granting a new trial.