**Joyce M. BANKS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 86–1129.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1988.

Decided Dec. 14, 1988.

---

Neil Intrater, Washington, D.C., for appellant.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

After spending the evening visiting with a friend and other guests, appellant Banks fell and was injured while descending a common stairway in an apartment house owned by appellee District of Columbia. The stairway was unlighted and lacking in secure handrails in violation of District of Columbia Housing Regulations. 56 DCRR §§ 2409, 2508 (1979), 14 DCMR §§ 505.1, 708.3, 708.11 (1986). A jury by special verdict found the District to have been negligent, but denied recovery on the ground of Banks' contributory negligence.

On appeal, Banks makes two principal arguments. First, she claims the right to a new trial because of the violation by counsel for the District of the court's *in limine* order precluding reference to Banks' alleged history of alcoholism. Second, she asserts that the jury instructions failed to adequately distinguish contributory negligence from assumption of risk. We affirm.

## I. *In Limine Order Violation* [1]

■ "In this jurisdiction it is settled beyond question that the granting or refusal

---

1. This appears to be the first case that has arisen in this jurisdiction in which we have been faced with a violation of an *in limine* order. Some jurisdictions suggest an analysis akin to a *per se* reversal rule. *See, e.g., State v. Smith,* 189 Wash. 422, 427, 65 P.2d 1075, 1078 (1937) (in view of deliberate disregard of *in limine* order, prejudice must be presumed and new trial granted); *Burdick v. York Oil Co.,* 364 S.W.2d 766, 770 (Tx.Civ.App.1963) ("violations of a

of a new trial is not subject to reversal, save when a clear abuse of discretion is shown." *Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 207 (D.C.1986) (citing *Hoover v. Babcock*, 53 A.2d 591 (D.C.1947) (footnote omitted)). It is the trial court which is in the best position to assess the potential for prejudice resulting from trial errors. Therefore, while mindful that allusion to the subject of an *in limine* order may well be prejudicial, we will defer to the trial court's determination as to whether prejudice resulted in fact unless that ruling constitutes an abuse of discretion. *Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 794, 174 Cal.Rptr. 348, 372 (1981) (since trial court in best position to evaluate effect of *in limine* order violation, its determination may be disturbed on appeal only if "patently wrong"); *Tate v. Gray*, 292 So.2d 618, 619 (Fla.1974) (no abuse of discretion found when trial judge denied motion for mistrial where *in limine* order had been violated).

Here the court issued an *in limine* order [2] precluding defense counsel from referring to or asking questions regarding Banks' alleged history of alcoholism, stating that "before such evidence comes in you should come up to the bench and alert the court that you intend to move in that direction." In granting the motion, the court distinguished evidence relating to alcohol consumption on the evening in question,[3] which was clearly admissible since highly relevant to the contributory negligence issue, from the matter of appellant's

alleged history of alcoholism, noting that this topic inhered great potential for prejudice.

Seeking clarification of the court's order, counsel for the District inquired about the admissibility of "treatment reflected in the hospital records" and was told in response "there has been a *limine* matter raised to that. When the time comes and before the jury gets any evidence of the record we can go into all of this." The "treatment" referred to concerned a prescription for librium, a drug used to combat *delirium tremens*, a side effect associated with alcohol withdrawal.[4] Nevertheless, in cross-examining Ms. Banks, counsel asked, "Is it not true that you were treated for *delirium tremens?*" Appellant's objection was promptly sustained, and the jury twice instructed to disregard the question. Appellant moved for a default judgment, which was denied, and that counsel be held in contempt of court, which the trial judge took under advisement.[5] Appellant points as well to two other occasions, one prior to the above violation, and one subsequent, where counsel for the District gave indication that he might be venturing into the prohibited subject area. In both instances objection was made before the jury heard questioning or testimony violative of the order, but Banks argues that the cumulative effect of these events was to alert the jury that it might be deprived of significant information.

court's solemn rulings should 'lead to serious consequences' "). We find more compelling, however, an approach that accords greater deference to the assessment of the trial court, since it is in the better position to determine the effect of the violation. This approach adopted by us is also well represented in the case law, as illustrated by the cases cited *infra*. *See generally*, Annotation, *Modern Statutes of Rules as to use of Motion to Secure Exclusion of Prejudicial Evidence or Reference to Prejudicial Matters*, 63 A.L.R.3d 311, § 4 (1975) (grouping cases according to disposition on appeal where *in limine* order violation cited as error).

2. Both the motion and the *in limine* order were oral, made immediately prior to jury selection.

3. Frequent references during the trial were made to this subject. Besides Banks and the friend she was visiting, several other acquaint-

ances were present in the apartment over the course of several hours, drinking rum and beer (which was specially sent out for). Banks herself in testimony acknowledged consuming two 10 oz. "ponies" of beer and preparing for herself but not consuming a mixed drink. The issue of the evening's alcohol consumption and possible effect on Banks was a subject of opening and closing argument by both sides.

4. Since appellee did not cross-appeal challenging the propriety of the *in limine* order, we do not reach the question of whether the motion was properly granted.

5. The record does not indicate that any action on the motion for contempt was taken subsequently.

It is, of course, not true that so long as a jury hears only prohibited questions and not prohibited answers, prejudice has necessarily been precluded. Indeed, the mere propounding of an improper question, and the making of an objection, injects into the trial a potential for prejudice. However, it is for the trial court to determine, within the sound exercise of its discretion, whether prejudice resulted in fact. This was a key issue of inquiry (as is often the case in a new trial determination) and it was squarely determined against appellant. Here the trial court specifically found that "plaintiff was not prejudiced in her right to a fair trial by the actions of defense counsel...."[6] We think it unwarranted to trammel the trial court's normal standard of sound discretion in new trial rulings by imposing a special "clear and convincing evidence" requirement for *in limine* violations alone.[7]

Here, the District's opening and closing statements were free of reference to any issue of chronic alcoholism. *See Reidelberger v. Highland Body Shop, Inc.,* 79 Ill. App.3d 1138, 1145, 35 Ill.Dec. 413, 417, 399 N.E.2d 247, 251 (1979) (noting in reversing new trial order that prohibited subject area was not alluded to in closing argument), *aff'd,* 83 Ill.2d 545, 48 Ill.Dec. 237, 416 N.E.2d 268 (1981). Furthermore, in keeping with the *in limine* order, medical records referring to the librium treatment were withheld from the jury. There was but a single question put suggestive of a possible chronic alcoholism problem, which was immediately followed by a corrective instruction. *See Weeda v. District of Columbia,* 521 A.2d 1156, 1163 (D.C.1987) (jurors presumed to have understood and followed the court's instructions); *Olsen v. French,* 456 A.2d 869 (Me.1983) (since it must be presumed jury followed judge's instructions to disregard question violative of *in limine* order, refusal to order mistrial *sua sponte* not abuse of discretion). Under the circumstances, we cannot say that the trial court abused its discretion in not granting a new trial.[8]

## II. *Contributory Negligence*

In attempting to establish Banks' contributory negligence, the District argued as a relevant fact Banks' failure to ask that the door of the apartment she had just left be held open so as to cast light upon the stairs.[9] Banks in effect argued at trial and

6. Furthermore, earlier in the order denying the new trial motion, the court stated that it "was satisfied at the time of trial and remains satisfied that any objectionable questions by defense counsel, which related to the precluded subject, were ruled upon and instruction given, where necessary, to assure that plaintiff was not prejudiced in her right to a fair trial." We fail to see how a presumption of prejudice doctrine could affect these express affirmative findings of no prejudice.

7. To the extent that deterrence of such conduct is the objective, other means are available impacting directly upon the offending attorney rather than the client. *See, e.g.,* note 5, *supra.*

8. *See Montgomery v. Vinzant,* 297 S.W.2d 350, 356 (Tx.Civ.App.1957), in which the court stated "although we can appreciate the fact that appellant feels abused under the circumstances since he ... did everything possible ... to prevent [reference to prejudicial material] ... it is to be reasonably inferred that after careful consideration [the trial] court concluded that proper action required ... the overruling of the motion for new trial"; *State v. Johnson,* 183 N.W.2d 194, 198 (Iowa 1971) (prompt withdrawal of testimony given in violation of *in limine* order

coupled with admonition to the jury "leaves no ground for complaint except in extreme circumstances where it is manifest its prejudicial effect remained and influenced the verdict despite its exclusion"); *Grimshaw, supra,* 119 Cal.App.3d at 794, 174 Cal.Rptr. at 372 (in denying motion for new trial, trial judge impliedly determined that *in limine* violation did not result in prejudice and that verdict was not result of misconduct).

While we share the concern of the majority opinion in *Brown v. Royalty,* 535 F.2d 1024 (8th Cir.1976), a case cited by appellant, we find the dissent's recognition that the "intent and degree of harm [resulting from an *in limine* violation] can be judged by the judicial officer who observed the conduct" and that therefore "[o]nly the most compelling circumstances would warrant an appellate court's rejection of a district court's own assessment of whether a violation of its ruling was fatally prejudicial" to be the more persuasive rule. *Id.* at 1029–30.

9. By the time Banks left the apartment in the late evening, night had fallen and the common stairway was dark. However, Banks testified that while the apartment door was open at her departure, some light from the apartment shone partially on the steps. After the door was closed, the stairway was completely black. She

before us that consideration of this fact as bearing on contributory negligence was improper and that the jury should have been so instructed. More generally, as we understand it, Banks argues that she had the absolute right to use the stairs in the condition she found them, relying on our decision in *Scoggins v. Jude*, 419 A.2d 999 (D.C.1980). This argument misreads that decision.

In *Scoggins*, we rejected the use of an assumption of risk defense [10] where a tenant remains on leased premises where Housing Regulation violations exist, and the parties are in agreement that that principle is applicable here.[11] Likewise, the parties are in agreement that the defense of contributory negligence is available as a defense, since requiring users of leased premises to act reasonably is in no way inconsistent with the policy underlying the housing regulations. *See Scoggins v. Jude, supra,* 419 A.2d at 1005; *District of Columbia v. Mitchell,* 533 A.2d 629, 643 (D.C.1987) (contributory negligence will be a defense if tenant, knowing of a danger, unreasonably uses the premises).

The discrepancy between the parties turns on the proper means of defining contributory negligence in Housing Regulation violation cases. The trial court here, noting our endorsement of the Restatement's contributory negligence analysis, incorporated the language of the Restatement's definition of that concept,[12] quoted in *Scog-*

*gins*, into its instructions to the jury. Appellant contends that the trial court erred in including that portion of the Restatement definition which provides in relevant part that the plaintiff's contributory negligence may be "an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know...."

It is true on the facts here that it would be impermissible as a matter of law to have allowed the jury to use the mere fact that Ms. Banks opted to descend the staircase—rather than, for example, remain in her friend's apartment for the night—as foreclosing her action for negligence.[13] However, this is not to say that the jury could not consider whether the *manner* in which she encountered the danger was reasonable.[14]

*Scoggins* adopted the Restatement's analytical distinction between *reasonable* and *unreasonable* action in the face of a known risk, characterizing the latter as a form of contributory negligence. *Scoggins v. Jude, supra,* 419 A.2d at 1004. *Scoggins* held that as a matter of law the fact that the tenant and guest knowingly exposed themselves to danger by moving furniture under a leaking ceiling could not be characterized as unreasonable. *Id.* at 1005. In holding, however, that a contributory negligence instruction was warranted as to the tenant's

---

did not ask her friend to keep the apartment door open while she descended the stairs.

**10.** That is, the plaintiff's express or implied and voluntary consent to encounter a known danger arising from the defendant's negligent or reckless conduct. RESTATEMENT (SECOND) OF TORTS § 466 comment d (1965).

**11.** In *Scoggins*, we treated both the tenant and his guest as affected by the same legal principles where a Housing Regulation violation is involved.

**12.** The definition in its entirety reads: "The plaintiff's contributory negligence may be either (a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or (b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reason-

able man should conform in order to protect himself from harm." RESTATEMENT (SECOND) OF TORTS § 466 (1965).

**13.** *See District of Columbia v. Mitchell, supra,* 533 A.2d at 639–40; *Scoggins v. Jude, supra,* 419 A.2d at 1004; *Kanelos v. Kettler,* 406 F.2d 951, 956 (1968); *Heinberg v. Sikora Realty Corp.,* 110 Misc. 323, 324, 180 N.Y.S. 405, 406 (1920) (tenant cannot be charged with contributory negligence merely because she persisted in using passageway left dark in violation of landlord's statutory duty).

**14.** *See District of Columbia v. Mitchell, supra,* 533 A.2d at 643; *Rodgers v. Stoller,* 284 Ky. 108, 110, 143 S.W.2d 1047, 1048 (1940) (noting that although tenant's duty of due care should not be interpreted to mean that she used dark hallway at her peril, her knowledge that hallway was unlighted cast upon her a duty to use due care for her own safety).

conduct in exacerbating the danger by hanging plants from the already-impaired ceiling, we noted that:

> If there is sufficient evidence tending to show a tenant (or a tenant's guest), *by act or omission, unreasonably increased the exposure* he or she otherwise would have had to danger created by a landlord's failure to comply with the Housing Regulations, the jury should be allowed to consider whether there was contributory negligence. *See* Restatement, *supra* 466(a) & (b). No public policy would be frustrated.

*Id.* at 419 A.2d 1005 (emphasis added).

Applying this rule to the *Scoggins* facts, we held that the tenant's affirmative act of hanging plants from the ceiling "unreasonably increased" his exposure to danger. *Id.* at 1005–06. Appellant seeks to distinguish her conduct by contending that, unlike the tenant in *Scoggins,* she did not affirmatively increase the danger of the stairwell. The shortcoming of appellant's interpretation of *Scoggins* is that it finds a rule of law in the court's fact-specific application, ignoring the rule's "act *or omission*" language. Unreasonable conduct which adds to a dangerous condition need not necessarily consist of affirmatively *worsening* the danger; failure to take reasonable steps to lessen one's exposure to danger is also required. Such a rule is in no way inconsistent with *Scoggins;* rather, the discussion in that case as to whether "reasonable alternatives" existed to the conduct at issue set forth a differentiating principle between disallowed assumption of risk analysis and proper contributory negligence analysis. It is not reasonable, and indeed would circumvent the policies of the

Housing Regulations, to bar a tenant from recovery because he stepped under a leaking ceiling in an effort to save his furniture; it might be reasonable, however, to bar a tenant from recovery who insisted on sleeping under the only section of ceiling which was cracked. *Cf. District of Columbia v. Mitchell, supra,* 533 A.2d at 655 (concurring opinion).

■ Thus, the trial court did not err in defining contributory negligence by adopting the language of the RESTATEMENT (SECOND) OF TORTS § 466 (1965), as endorsed in *Scoggins.* That instruction, with its emphasis on reasonableness, was on its face a correct statement of the law. While the trial court might have clarified for the jury the exact contours of contributory negligence [15]—that is, explaining to the jury that Ms. Banks could not be held to have "assumed the risk" by the mere fact of using the stairs—no miscarriage of justice occurred in not doing so.[16]

■ It is significant that during the course of the trial the District's counsel did not once intimate to the jury that Banks ventured down the darkened stairs "at her peril." The District's contributory negligence theory sought to focus the jury's attention on the question of whether Banks' conduct in descending the stairs was reasonable under the circumstances. Examples of unreasonable conduct alluded to included the issue of intoxication, the donning of a jacket while descending the stairs, and the closing of her friend's door, when to do so blocked light from illuminating the stairs.[17] As already indicated, the last line of argument was quite permissible. As for the question of whether the

---

**15.** The jury perhaps could have been instructed by reference to the RESTATEMENT's § 473, which states that:

> If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably.

RESTATEMENT (SECOND) OF TORTS § 473 (1965).

**16.** In addition to objecting to the use of the language of Restatement § 466(a), see note 9 *supra,* appellant proposed a jury instruction in-

corporating her theory of the *Scoggins* holding and thus erroneously suggesting that plaintiff's right to use the stairs was absolute. Since the proposed instruction was overly broad, the trial judge cannot be faulted for denying it. Under such circumstances, we may reverse only if it is apparent from the record that a miscarriage of justice has occurred. *District of Columbia v. Mitchell, supra,* 533 A.2d at 646.

**17.** These facts belie appellant's contention that there was no evidence upon which a jury could properly have found contributory negligence.

jury might have improperly gleaned that Ms. Banks "assumed the risk" of the stairway, the record lacks support for this view. Assumption of risk was not argued to the jury. "A trial court has broad discretion in fashioning appropriate jury instructions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law." *Psychiatric Inst. of Washington v. Allen,* 509 A.2d 619, 625 (D.C.1986); *see also Christian v. United States,* 394 A.2d 1, 49 (D.C.1978) (per curiam) (failure of trial court to give requested instruction not reversible error if instructions given inform jury of the applicable legal principles).[18]

*Affirmed.*

SCHWELB, Associate Judge (concurring in part and dissenting in part):

This is a case in which a government lawyer played litigation hardball with a hand grenade. To decide it, we should, on these facts,

> look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence, this principle has been applied in many diverse classes of cases by both law and equity courts. . . .

*Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 232–233, 79 S.Ct. 760, 762, 3 L.Ed. 2d 770 (1959).

Foreseeing potential explosiveness in the issue of his client's alleged alcoholism and *delirium tremens* (D.T.'s) and her treatment for that condition, counsel for Ms. Banks made, and Judge Wagner granted, a motion *in limine* prohibiting counsel for

the District from mentioning the subject in the presence of the jury without prior leave of court. The purpose of such a motion is to allow a party to obtain an order excluding inadmissible evidence "without having to object to, and thereby emphasize, the evidence before the jury." *Dept. of Public Works, Etc. v. Sun Oil Co.,* 66 Ill.App.3d 64, 22 Ill.Dec. 826, 828, 383 N.E.2d 634, 636 (1978). An *in limine* order is designed, among other things, to obviate the need to instruct jurors to forget what they have just heard, or for counsel to have to make frantic requests for a bench conference while the jury wonders what he is trying to hide.

Unfortunately, Assistant Corporation Counsel Rashad repeatedly disregarded and attempted to evade Judge Wagner's order. On one occasion, he asked Ms. Banks, in the presence of the jury, if she had been treated for *delirium tremens.* On two other occasions,[1] he attempted to raise the forbidden subject while the jury was in the box and plaintiff's counsel was able to forestall him from doing so only by requesting a bench conference. Plaintiff was thus put into the very position which the *in limine* order was designed to prevent; her counsel had to rush to the bench, in full view of the jury, to keep out material which should never have come up at all.

There can be no doubt that Rashad's tactics constituted a calculated and deliberate attempt to bring to the jury's attention prejudicial material which Judge Wagner had explicitly excluded. As the judge told him after he had asked the prohibited question:

> Counsel, you know that you were instructed that you were not to go into

---

**18.** We agree with appellant that the trial court erred in its instruction relating to the landlord's duty of care, but since the jury found negligence on the part of the landlord, the error was harmless. *Cf. Hopper v. Evans,* 456 U.S. 605, 613–14, 102 S.Ct. 2049, 2054, 72 L.Ed.2d 367 (1982) (new trial not warranted where jury instructions did not result in prejudice). Appellant's claim that the trial court erred in its treatment of jury deadlock, including the giving of an antideadlock charge, is meritless. *See Capitol Hill Hospital v. Jones,* 532 A.2d 89, 92 (D.C.1987).

**1.** The first of these attempts occurred when Ms. Banks' expert was on the witness stand discussing her medical records, and her counsel's request to approach the bench may well have conveyed to the jurors that there was something in the records that he wanted to keep out. The second attempt occurred after the improper question about *delirium tremens* had been asked, and began with Rashad asking "Were you prescribed . . .?" Rashad admitted at the bench that he was seeking to elicit that Ms. Banks had been treated with librium for *delirium tremens.*

that ... and you did it anyway. You didn't ask to approach the bench, and you just totally disregarded the Court's prior ruling.

Judge Wagner indicated that she would consider holding Rashad in contempt, but apparently did not do so. *Cf. Fisher v. Pace*, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949) and *In re Thompson*, 454 A.2d 1324 (D.C.1982), both sustaining contempt adjudications of counsel in comparable circumstances.

It is true that Judge Wagner instructed the jury to disregard Rashad's offending question, and that jurors are generally presumed to follow the trial judge's instructions. *Thompson v. United States*, 546 A.2d 414, 425 (D.C.1988). But "if you throw a skunk into the jury box, you can't instruct the jury not to smell it." *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962), *quoted in Thompson, supra*, 546 A.2d at 425. Once the jurors had heard the question about *delirium tremens* and observed Ms. Banks' lawyer heading for the bench when medical records or medical treatment were mentioned, there was surely a danger that the stench of the skunk could not be expelled by the fragrant aroma of a curative instruction. The human mind does not work that way; even the presumptively disciplined judicial intellect has a sub-conscious. *See United States v. Walker*, 154 U.S.App.D.C. 6, 8, 473 F.2d 136, 138 (1972). Although the jurors in this case were apparently a very intelligent group, they did not have judicial training.

As the majority correctly points out, there is case law supporting the positions of both parties on this issue. I find far more persuasive, however, those authorities that at least presumptively penalize the miscreant rather than his victim where, as here, there have been deliberate violations of a judge's *in limine* order.

"The presentation of excluded matter to the jury by suggestions, by the wording of a question, or by indirection, violates professional standards and counsel's duty to the court." *Burdick v. York Oil Company*, 364 S.W.2d 766, 770 (Tex.Civ.App.1963). It is not enough to instruct the jury to disregard that which it should not have heard; the court must enforce its rulings, and violations should lead to serious consequences. *Id.* at 770. Where counsel has deliberately disregarded the court's ruling, prejudice must be presumed. *State v. Smith*, 189 Wash. 422, 427, 65 P.2d 1075, 1078 (1937). I agree with the court in *Lapasinskas v. Quick*, 17 Mich.App. 733, 737 n. 1, 170 N.W.2d 318, 319 n. 1 (1969), quoting from Davis, *Motions in Limine*, 15 CLEV.MAR.L.REV. 255, 256 (1966), that

> [I]f prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the plaintiff is powerless unless he wants to forego his chance of a trial and ask for a mistrial. Once the question is asked, the harm is done.

In spite of these considerations, I would not adopt a *per se* rule of reversal even where, as here, there have been serious and deliberate violations of an *in limine* order.[2] I would hold, however, that upon a showing of misconduct such as that which Ms. Banks has made here, a presumption of prejudice should arise. To rebut that presumption, the violator should be required to demonstrate by clear and convincing evidence that his transgressions of the order were harmless.[3]

In the present case, the experienced trial judge made a conscientious effort to exercise her discretion. In finding no prejudice, however, she did not first apply the presumption of prejudice which, in my view, should govern situations of this kind. I would therefore remand to the trial court with directions to apply such a presumption

---

2. The trial judge, having been present, is in a better position than a reviewing court to determine, for example, if the trips to the bench forced by Rashad's incipient violations were probably recognized by the jurors as designed to keep out further allusions to Ms. Banks' alcohol problems and treatment.

3. I recognize that counsel for Ms. Banks did not specifically argue for a presumption of prejudice. I think the concept is sufficiently related to his contentions, however, to preclude any argument that the issue is not properly before the court.

and to make appropriate findings as to whether it has been rebutted by the prescribed level of proof. Accordingly, I respectfully dissent from Part I of the majority opinion.[4]

---

**4.** I concur in all respects with Part II of the court's opinion, respecting the trial court's in-   structions.