Robert JACKSON and Ella Mae Boyd, Administratrix of the Estate of Leo M. Boyd, deceased, Appellants,

v.

Joseph SCHENICK and Leah Schenick and District of Columbia, Appellees.

No. 2805.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 18, 1961.

Decided Oct. 26, 1961.

James A. Welch, Washington, D. C., with whom H. Mason Welch, J. Harry Welch, J. Joseph Barse, Arthur V. Butler and Walter J. Murphy, Jr., Washington. D. C., were on the brief, for appellants.

Albert D. Brault, Washington, D. C., with whom James A. Willey, Washington, D. C., was on the brief for appellees Schenick. James A. Crooks, Washington, D. C., also entered an appearance for appellees Schenick.

H. Thomas Sisk, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee District of Columbia.

Before HOOD and QUINN, Associate Judges, and SMITH, Chief Judge of The Municipal Court for the District of Columbia, sitting by designation.

QUINN, Associate Judge.

This is a tort action involving claims and cross-claims for property damage resulting from a collision between a District of Columbia fire truck and a panel truck owned by the late Leo Boyd. After trial, the court attributed sole responsibility for the collision to the negligent operation of the Boyd vehicle by its driver, appellant Robert Jackson. Accordingly, judgment was entered assessing appellants $2,092.46 for repairs to the District's truck and awarding $2,221.17 compensation to appellees Schenick whose store building and parked automobile were struck by the colliding vehicles.[1]

1. Initially, James Payne, driver of the District fire truck, was joined as a party defendant by the Schenicks. Thereafter, the District applied for and was granted an order substituting it for defendant Payne, under authority of the newly en-

As this collision occurred while the District truck was on an emergency run, we believe that it would be advisable initially to set forth those portions of the Traffic and Motor Vehicle Regulations of the District of Columbia, Part I—Rules of the Road, which are here pertinent:

"Sec. 6. *Authorized Emergency Vehicles*

"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(b) The driver of an authorized emergency vehicle may:

\*       \*       \*       \*       \*       \*

"2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"3. Exceed the prima facie speed limits so long as he does not endanger life or property;

\*       \*       \*       \*       \*       \*

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of any said vehicle while in motion sounds audible signal by bell, siren or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

\*       \*       \*       \*       \*       \*

"Sec. 50. *Operation of Vehicles and Streetcars on Approach of Authorized Emergency Vehicles*

"(a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of Section 131.1 of these regulations, or of a police vehicle properly and lawfully making use of an audible signal only:

"1. The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

\*       \*       \*       \*       \*       \*

"(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

acted District of Columbia Employee Non-Liability Act. Public Law 86–654, 86th Cong., 2d Sess., 74 Stat. 519 (July 14, 1960). This substitution was improper, as we held in Barrick v. District of Columbia, D.C.Mun.App.1961, 173 A. 2d 372, because the cause of action accrued prior to the effective date of that statute. However, this substitution had no effect on the dispostion of the case because the trial judge expressly refrained from giving the District the benefit of the gross negligence standard there employed. The issue as it affected the Schenicks' suit against the District and the District's cross-claim against Jackson and Boyd remained that of ordinary negligence.

The collision took place on the clear and cold morning of November 21, 1959, as the fire truck traveled northward along 30th Street, N. W., in response to a fire alarm. On this emergency run the truck's headlights, oscillating red light, and siren were operating to warn those ahead of its approach. Nearing the intersection at P Street, N. W., driver James Payne slowed the nine-ton vehicle from 25–30 to 15–20 miles per hour, aware of the fact that P Street traffic enjoyed a through way while that on 30th Street was controlled by a stop sign posted on the corner. Continuing at that speed, without stopping, Payne proceeded into the intersection after looking down P Street to satisfy himself that it was free of oncoming traffic. Neither he nor his passenger, Sergeant Chamberlain, seated next to him, saw the westerly bound Boyd vehicle although both men testified that they looked in its direction. As a result of the force of the crash the fire truck veered into the Schenicks' building, situated on the northwest corner, while the Boyd vehicle careened into a group of automobiles parked along 30th Street, among which was one belonging to appellees Schenick.

■ First, appellants charge that the evidence does not support the finding of negligence based upon the trial court's determination that Jackson was driving at an unreasonable speed and that he improperly failed to yield the right of way to an emergency vehicle.

In answer to this contention we refer to the testimony of Samuel Mills a fellow employee of Jackson and a passenger in the Boyd vehicle at the time of the collision. Having testified that Jackson was driving at a speed of 20 or 25 miles per hour, Mills admitted on cross-examination that on an earlier occasion, at a Corporation Counsel

hearing, he had estimated the speed at 30 to 35 miles per hour. Furthermore, Sergeant Chamberlain, who caught a momentary glimpse of the Boyd vehicle immediately before the impact, stated his opinion, without objection being raised, that it was exceeding the speed limit. Such testimony gave the court adequate basis for resolving the issue of fault against appellants.

■ Aside from the finding of excessive speed, the court also predicated its decision on a failure to comply with the aforementioned Section 50 of the Traffic Regulations which requires that traffic yield the right of way to emergency apparatus. Appellants retort that the duty to yield does not arise until a motorist has actual warning of the emergency vehicle's presence in the vicinity and that Jackson in this case did not receive such warning. But there was a basis for concluding that Jackson should have had warning. In this regard one of the witnesses testified that she was aroused from sleep by the wailing siren and that fully ten seconds elapsed from that time to the sound of the crash. Since she was able to hear the siren from her third-floor apartment, a half-block from the scene, well in advance of the collision, the court could have inferred that Jackson would have heard the warning had he been driving with due care and attention. This court has had occasion to say that a person must see what is reasonably there to be seen.[2] Ordinarily, this same degree of alertness will be required of a party with respect to his other senses and mental faculties.[3] Unless a motorist conforms to this standard of care and preparedness, he assumes the consequences for the negligent operation of his vehicle. The court here then was justified in determining that an audible warning signal was

2. Brown v. Clancy, D.C.Mun.App.1945, 43 A.2d 296.

3. That a motorist is also required to hear what is reasonably there to be heard, see Matcheski v. Gutkin, 1954, 19 Conn. Sup. 29, 109 A.2d 879; McEwen Funeral Service v. Charlotte City Coach Lines, 1958, 248 N.C. 146, 102 S.E.2d 816; Hashey v. Board of Fire Com'rs of Roosevelt F. Dist., Sup.1959, 192 N.Y.S. 2d 767; Virginia Transit Company v. Hodges, 1959, 201 Va. 232, 110 S.E.2d 231.

given, that Jackson had ample opportunity to discover the emergency vehicle's presence and that he had sufficient time to react in the manner prescribed by Section 50 of the Traffic Regulations.

Appellants' effort to apply this standard against the District to establish contributory negligence is of no avail. The testimony showed, and the trial court concluded, that Payne's actions in proceeding into the intersection were consistent with due regard for safety, as the exempting regulation requires. He slackened speed as he approached the crossing and observed traffic conditions before proceeding. If he did not see the Boyd vehicle in time to avoid the accident, a possible explanation was the excessive speed maintained by Jackson, as the trial court determined, rather than inattention and carelessness on his part. We find no error.

Affirmed.