MICHAEL PECKSKAMP, A MINOR, BY HIS FATHER AND
NATURAL GUARDIAN, ALBERT PECKSKAMP, AND
ANOTHER v. GEORGE J. McDOWALL AND ANOTHER,
d.b.a. McDOWALL COMPANY, AND ANOTHER.

165 N. W. (2d) 254.

February 21, 1969—No. 41038.

*Hughes, Hughes & Hughes,* for appellants.

*Quinlivan, Quinlivan & Williams* and *O. C. Adamson II,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

440

Frank T. Gallagher, Justice.

This is an appeal from a judgment of the district court following a directed verdict for defendants at the close of plaintiffs' case.

On June 12, 1964, Michael Peckskamp, a 9-year-old boy, was run over at an intersection in St. Cloud, Minnesota, by a truck driven by defendant Michael Jon Nystrom and owned by defendants George J. McDowall and Grace A. McDowall, a partnership doing business as McDowall Company. Two actions were started, one by Michael Peckskamp by his father and natural guardian, Albert Peckskamp, and one by the father in his own right to recover hospital and medical expenses incurred in the care of Michael. The cases were consolidated for trial. At the close of plaintiff's case, the court directed a verdict in favor of defendants on the ground that plaintiffs had failed to prove actionable negligence.

On appeal, plaintiffs contend that the evidence introduced by them presented a jury issue as to defendants' negligence on four grounds: (1) Failure of defendants to equip the truck involved with proper turn signals; (2) failure of the truckdriver to signal his turn; (3) improper position of the truck at the intersection prior to making the turn; and (4) lack of a proper lookout because the truck was not equipped with a mirror which would enable the driver to see the right side of the truck.

At trial, plaintiffs introduced the following evidence in support of their claims: Michael Peckskamp rode a friend's bicycle to a local store to purchase balloons. On his way home, riding west on Eighth Street, he was steering the bike with one hand and eating a piece of candy with the other. He stopped for the semaphore at the intersection of Eighth Street and Ninth Avenue just ahead of the right rear tires of defendants' 1½-ton truck, which was stopped for the red light. The truck was even with the crosswalk and about 4 feet from the curb, at a slight angle to the right, the direction in which it eventually turned. At this point there is some uncertainty as to exactly what happened.

Jerry Hughes (not related to plaintiffs' counsel) testified that he stopped for the light behind the truck. Hughes said that as he was stopped the boy passed between him and the curb on his right and stopped between the curb and the truck, his right foot on the curb, "and he was balancing back and forth and it seemed to me as though he made an over-balance

and fell right in front of the dual wheels of the truck." He also said that at no time did he see any signal light on the truck indicating that it was going to turn at the intersection.

Michael testified that as he rode up on the bike he did not see any red light flashing on the truck; that he put his foot on the curb because he was going to wait for the traffic light to turn green, and when it turned green "I gave myself a little push off of the curb and I saw the truck turning, and I put on my brakes and fell under it." He said that he did not recall the truck's going over him.

On cross-examination Michael said that while he was waiting for the traffic light to change he had his foot on the curb to balance himself and was chewing the candy. He was asked, "[I]t is true, isn't it, Michael, as Mr. Hughes has testified, that before you started out you lost your balance and fell to the left under the wheels of the truck?" He replied, "I don't remember that." The record seems clear, however, that as the truck started to turn, the right rear wheels passed over part of Michael's body and he was seriously injured.

Testimony and pictures were introduced to show the condition of the truck. Defendant George McDowall was called under the rules and testified that the truck had been purchased by him as a used truck in about 1960; that the box on the truck had been purchased after the truck and had been extended from 9 feet to 12 feet in length by the former owner.

The parties stipulated that in addition to the two signal lights (presumably the clearance lights required to show the width of the truck at night) there was a taillight (presumably the turn signal) located on the right side 18 inches below the bottom of the body of the truck and 33 inches forward from the back of the box.

Defendant Nystrom, driver of the truck, testified as to the position of the turn signals on the truck although both he and defendant George McDowall stated that they were not visible on the pictures of it. Nystrom stated further that the right turn signal was on at the time he was stopped at the intersection. Hughes testified, however, that he did not see any turn signal while he was stopped behind the truck. The boy, Mi-

chael, also testified that he did not see any turn signal as he rode up behind the truck. On cross-examination defendants introduced an earlier deposition in which he had stated that he did not look at the back of the truck as he approached it. Despite this, the boy maintained that he looked at the rear of the truck but did not see a signal, although he did not remember how far he was from the truck at the time he looked.

The truckdriver testified that the mirror on the right side of the truck had been bent and that it had to be adjusted every day; that he had adjusted it the morning of the accident; that, even when adjusted, it did not afford the driver a view of the right side of the truck, at least as close to the side as the boy was stopped; that he could not have seen Michael in the right mirror if the latter had been 5 feet high; that the mirror was adjusted to afford the driver a view of the rear of the truck, not the side; and that he did not know why anyone was supposed to see anything on the side of the truck.

In support of their various allegations of negligence, plaintiffs cite several provisions of the Highway Traffic Regulations Act which, they contend, at least make the question of defendants' negligence a matter for jury determination. They cite Minn. St. 169.57, subd. 2(a), which reads:

"Any vehicle may be equipped, and when required under this chapter shall be equipped, with a lamp or lamps or mechanical signal device of such color as may be approved by the commissioner and capable of clearly indicating any intention to turn either to the right or to the left and shall be visible and understandable during both daytime and nighttime from a distance of 100 feet both to the front and rear."

Plaintiffs contend that the light on defendants' truck was not visible and therefore did not meet the statutory standard. They also allege that defendants violated § 169.19, subd. 5, which requires that a signal of intention to turn be given continuously for at least the last 100 feet before the turn is made, pointing specifically to the testimony of Jerry Hughes and the boy that no signal was given. The other statute cited by plaintiffs is § 169.19, subd. 1(1), which requires that both the approach for a right turn and the turn shall be made as close as practicable to the right-hand curb. They contend that 4 to 5 feet from the right curb on a street meas-

uring 18 feet from centerline to curb is not within the statutory requirements.

Defendants concede in their brief that plaintiffs' evidence may have created a jury issue as to whether the truck's turn signal was on inasmuch as the truckdriver stated that it was and other witnesses stated that it was not. They question, however, how the lack of a turn signal in this case could be negligence that would be the proximate cause of Michael's accident where, according to defendants, the boy paid no attention to whether the truck was signalling a turn or not. It is their position that Michael did not conduct himself in reliance on a belief that the truck was not going to turn. They contend that he simply lost his balance and fell before the truck started to turn and that the accident would have happened in the same way whether defendants' turn signal was on or not.

As to the failure of the truck to be as close to the curb as practicable, the defendants contend, first, that it was sufficiently close to the curb to be within the statutory standard; and, second, that unless the truck was required to be virtually in the gutter on the right side of the street prior to making its turn, there would still have been plenty of room for the boy and his bike between the truck and the curb. The evidence showed that Michael was about 1½ feet from the curb—close enough to rest his foot on it. Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537, cited by plaintiffs on this point, is not, in our opinion, controlling here as the facts there are not comparable to those in the case before us. In that case the action was for injuries arising out of a collision between plaintiff's auto and defendants' truck in North Mankato. Plaintiff drove west on Belgrave Avenue at 4 to 6 miles per hour. Defendants' truck came from the west at from 18 to 20 miles per hour. It was 5:45 p. m. and dark. Both vehicles traveled in substantially the middle of the avenue, which was about 40 feet wide, and both drivers knew that it was icy at and near the intersection at which the collision occurred. It appears that as the truck was turning to the left it skidded on the icy street and came into contact with plaintiff's car. We said there (172 Minn. 596, 216 N. W. 539) that the evidence permitted a finding that the truck traveled in

the middle of the avenue, which made it proper for the court to instruct the jury "that it is the duty of a driver intending to turn to the right at an intersection to drive to the extreme right side of the street approaching the intersection."

On the question of lookout raised by plaintiffs, it is apparently contended that defendants were negligent in operating a truck so equipped that the driver could not see the area along the right-hand side. They claim that the truck had no rearview mirror in the cab, and although it did have outside rearview mirrors mounted on either side of the truck, the one on the right had been damaged and required an adjustment every morning, including the day of the accident. Minn. St. 169.70, dealing with rearview mirrors, requires only that every vehicle where the driver's view to the rear is obstructed shall have "a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such vehicle." It should be noted that the statute uses the term "mirror" rather than the plural form "mirrors," and speaks of a view to the *rear*. It would seem that a single mirror on the left side of the truck would comply with the statute if it provided an adequate view of the area behind the truck and that a mirror on the right-hand side is not a statutory requirement. Indeed, plaintiffs do not contend that defendants have violated any statutory requirements in this regard. Rather, they contend that prior decisions of this court will support a finding of negligence on the part of defendants in driving and allowing a truck to be driven primarily for intracity use without some method for observation of its right side by the driver.

In support of this claim, plaintiffs rely on Kuether v. Locke, 261 Minn. 41, 110 N. W.(2d) 539, in which this court upheld a jury instruction to the effect that a driver has a duty to keep a proper lookout to the side as well as to the front and rear. However, an examination of the facts in Kuether makes it plain that, taken in context, the instruction had reference to the driver's obligation to be aware of traffic conditions to his right and left as he drove. This is not the same as requiring a driver to equip his vehicle so that he can observe the area adjacent to the right rear tire, where it is not possible to make such observation without spe-

cial equipment. Most motor vehicles today have a so-called "blind spot" on the back portion of the right side, and it is for the legislature, not this court, to require installation of equipment to eliminate this problem.

Plaintiffs point to Loftus v. City of Austin, 252 Minn. 523, 91 N. W. (2d) 77, where we held that the question of negligence by the city in failing to provide a right-hand mirror, affording the driver-employee a view of the area near the right rear tire, was properly submitted to the jury. In Loftus, the truck involved was a street flusher, on which the nozzle used to wash down the street was located on the right side. The accident occurred when a small boy ran beside the truck, playing in the water, and was run over by it. As the opinion indicates, that case is distinguishable from the present one in that it involved the concept of attractive nuisance. The attraction to a small boy on a hot summer day of a slow-moving truck spraying water could well have been anticipated by the city, and yet the driver was provided no means of viewing the operative machinery of the truck. Thus, the finding of negligence for failure to provide a mirror affording a view of the street in the area of the rear nozzle was due to the special nature of the vehicle involved and would not require all trucks to be so equipped.

The question before the court here is whether the plaintiffs have presented sufficient evidence, when we construe the testimony most strongly against defendants, as we must in a directed verdict, to establish a jury question as to defendants' negligence.

At the close of plaintiffs' case, defendants moved for a directed verdict on the grounds that no actionable negligence had been shown on the part of defendants, or either of them; that the negligence of plaintiff Michael Peckskamp in the operation and control of his bicycle immediately prior to the accident constituted contributory negligence proximately causing his injuries as a matter of law; and that the accident, so far as defendants were concerned, was as a matter of law unavoidable. The court then said:

"I have listened carefully to counsels' arguments and I have checked one or two matters with the reporter for my own information, and I am of the opinion that I shall have to grant defendants' motion. It isn't

my desire to do so, but I feel that it is my duty to do so, and such motion is, therefore, granted.

"Mr. Hughes: Is the motion granted on the failure to prove negligence? The Court's ruling is on the ground that the Court feels that there is no actionable negligence proved?

"The Court: Yes."

The rule is well settled that if the evidence as a whole so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence which, if standing alone, would justify a verdict to the contrary. Johnson v. Moore, 275 Minn. 292, 146 N. W. (2d) 599.

A motion for directed verdict admits the credibility of the evidence, and every inference which may be fairly drawn therefrom must be viewed in the light most favorable to plaintiff. See, Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. (2d) 380. In that connection, with respect to the rear signal and the conflict in testimony as to whether it was functioning, it is our opinion that the jury could have found that if the truck signal light had been visible in compliance with the statutory standard, Michael would have been aware of the defendant driver's intention to turn to the right and would have been alerted to exercise care to prevent contact with the rear wheels of the truck. Also, with knowledge that the rear of the truck was going to move closer to the curb as it made the right turn, the boy might have stopped farther to the rear of the truck as he waited for the traffic light to change. That question, we think, was for the jury to decide, especially in view of the fact that the parties stipulated that there was a taillight located on the right side 18 inches below the bottom of the truck body and 33 inches forward from the back of the truck.

A jury could also have found that the defendant driver had a common-law duty to keep a proper lookout as to traffic conditions that affected him, whether to the front, the side, or the rear, and that the driver did not keep such a lookout so as to be reasonably sure that he could proceed to the right without endangering others properly upon the

highway. Michael had a legal right to be on the highway. Minn. St. 169.221, subd. 1, provides: "Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter, * * *."

Another conflict in the testimony concerns whether the accident happened as Michael said—that when the traffic light turned green he gave himself a little push off the curb, and when he saw the truck turning he put his foot on the brakes and fell under the truck; or if it happened as Jerry Hughes said—that Michael was balancing back and forth on his bicycle and that it seemed to him that the boy overbalanced and fell in front of the dual wheels. In our opinion, a jury could have found that as Michael rode up on his bicycle he saw no truck signal light flashing; that he was where he had a right to be when he stopped at the curb; and that when he saw the traffic light turn green he started to go, but when he saw the truck turning right he tried to protect himself by stepping on the brakes and, instead, fell under the vehicle.

We cannot say here that the evidence as a whole, when viewed in the light most favorable to plaintiffs, so overwhelmingly preponderated in favor of defendants as to leave no doubt as to the factual truth that defendants were entitled to a directed verdict as a matter of law. It is our opinion that in the light of the record and in the interests of justice a new trial must be granted.

Reversed and new trial granted.