Kevin WASHINGTON, Appellant,

v.

**A & H GARCIAS TRASH HAULING CO., et al., Appellees.**

No. 87–886.

District of Columbia Court of Appeals.

Argued Feb. 23, 1989.
Decided July 16, 1990.
Rehearing and Rehearing En Banc Denied Jan. 24, 1991.

Lawrence S. Lapidus, with whom Donald J. Chaikin, Washington, D.C., was on the brief, for appellant.

Stephen P. Zachary, with whom David F. Grimaldi, Washington, D.C., was on the brief, for appellees.

Before FERREN, BELSON, and SCHWELB, Associate Judges.

BELSON, Associate Judge:

This case arises out of a collision between a bicycle courier and a trash truck, the "Macho Diesel," in a downtown intersection. The bicyclist, appellant Washington, brought an action sounding in tort, alleging that the negligence of the truck driver caused the collision. Defendants ("truck driver") denied primary negligence, and asserted the defense of contributory negligence. After a full trial on the merits, a jury found for the bicyclist and awarded him $31,640 in damages. The tri-al court, Judge Gardner, denied the truck driver's motion for judgment notwithstanding the verdict, but granted his alternative motion for a new trial. At a second trial before a different judge, Judge Suda, the trial court granted the truck driver's motion for directed verdict at the close of the bicyclist's case, ruling that the bicyclist had not made out a prima facie case of primary negligence against appellees, and that the bicyclist was contributorily negligent as a matter of law. The bicyclist appeals from both rulings. We affirm.

Our review of a grant of a new trial is limited to whether the trial court abused its discretion. *Oxendine v. Merrell Dow Pharmaceuticals, Inc.,* 506 A.2d 1100, 1110 (D.C.1986); *Rich v. District of Columbia,* 410 A.2d 528, 535 (D.C.1979); *Aqui v. Isaac,* 342 A.2d 370, 372 (D.C.1975). In ruling on the motion, the trial court may consider the credibility of witnesses as well as the evidence offered by both sides. *See Rich, supra,* 410 A.2d at 535 (citing *Taylor v. Washington Terminal Co.,* 133 U.S.App. D.C. 110, 113, 409 F.2d 145, 148 (1968)); 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2531 (1971). A review of the record of the first trial leads us to conclude that it was a proper exercise of the trial court's discretion to grant a new trial on the ground that the verdict was contrary to the clear weight of the evidence. We will not detail the basis for our conclusion, as it will become clear from the discussion of the grant of a directed verdict in favor of the truck driver on the substantially similar facts developed at the subsequent retrial of the case.

On review of an order granting a motion for directed verdict, this court will view the facts, as the trial court was required to, in the light most favorable to the non-moving party. *Bauman v. Sragow,* 308 A.2d 243, 244 (D.C.1973). While negligence is usually a question of fact for the jury, *see, e.g., Aqui v. Isaac, supra,* 342 A.2d at 372, it is clear that the court may take that issue from the jury in appropriate cases. We agree with the trial judge that on the evidence before the jury the only conclusion that it reasonably could have

reached was that the bicyclist was contributorily negligent. The trial court further concluded that the evidence required a finding that the bicyclist's contributory negligence was a proximate cause of the collision, a conclusion we regard as indisputable on this record. Looking to the truck driver's conduct, the trial court concluded that the record would not support a finding that primary negligence on the part of the truck driver was a proximate cause of the collision. Because we affirm the trial judge's ruling on contributory negligence, we need not reach the issue of primary negligence.[1]

The evidence before the trial court established that the truck and the bicycle collided as the truck was turning right onto M Street, N.W., from 19th Street. Where those two streets intersect, M Street runs one-way westbound, and 19th runs one-way southbound. Both parties had been proceeding south, the truck driver in the center lane of 19th Street and the bicyclist in the curb or parking lane. According to the bicyclist's testimony, there was a car parked in the curb lane not more than two car lengths north of the intersection, and the bicyclist was proceeding down 19th Street parallel to the trash truck, close enough to touch it but without crossing the line that separated the curb lane from the adjacent center lane. The bicyclist testified he was traveling next to the side view mirror on the passenger side of the truck as the vehicles approached the intersection. It was not clear from the bicyclist's testimony whether he was visible to the driver of the large trash truck. While the bicyclist did not see the trash truck's turning signal go on, and said he did not think it was on, he acknowledged that he did not look to see if the signal was on, as he was not paying any attention to that because he "didn't figure he was going to make that turn."

Judge Suda ruled in directing a verdict for defendants that appellant's contributory negligence was, as a matter of law, a proximate cause of the collision. This finding entitled the truck driver to a directed verdict. The bicyclist's own testimony established that as the bicycle and the trash truck approached M Street together, the bicyclist was aware of the truck. Even though he was not paying attention to the turn signal, he was fully chargeable with the knowledge that when the truck reached M Street on a green light and proceeded into the intersection, it would either go straight ahead or turn onto M Street. The bicyclist, for his own safety, was obliged to pay close attention to the movements of the truck, and to anticipate the possibility that it might turn right, toward the bicycle.[2] Even if the bicyclist was unaware that M Street was a one-way street for westbound traffic, he knew that a right turn was one of three possible directions the truck might take upon reaching the intersection. In turning right from the center lane, the driver was obeying applicable traffic regulations, as the curb lane was occupied by the vehicle parked just north ("one or two car lengths," according to appellant) of the intersection. 18 D.C.M.R. § 2203.3 (1981).[3]

---

1. Appellant did not argue before the trial court that Judge Suda was bound by Judge Gardner's ruling in the first trial, on similar evidence, that appellee was not entitled to judgment notwithstanding the verdict, nor does he raise this argument in his brief before this court. We therefore do not address it.

2. Bicyclists are "subject to all the duties applicable to the drivers of motor vehicles," 18 D.C. M.R. § 1201.1, except those which "by their nature, can have no reasonable application to a bicycle operator." *Id.* Among the regulations applicable to bicyclists are the following.
   18 D.C.M.R. § 2200.4 (1981):
   In every event speed shall be controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the street or highway in compliance with legal requirements and the duty of all persons to use due care.
   18 D.C.M.R. § 2213.4 (1981):
   An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle.
   We refer to the 1981 edition of the D.C.M.R. because it was in effect at the time of the collision in September 1983.

3. The regulation provides that
   Both the approach for a right turn and a right turn shall be made *as close as practicable* to the right-hand curb or edge of the roadway.
   18 D.C.M.R. § 2203.3 (1981) (emphasis added). As Judge Gardner commented concerning the

Because there was a parked car close to the intersection in the curb or parking lane, the truck could make the right turn only from the lane it occupied. The bicyclist could not reasonably rely on an assumption that the truck driver would anticipate traffic in a lane the truck driver would consider occupied by the parked car, or on his stated assumption that he "didn't figure he was going to make that turn."

Given the circumstances under which the bicyclist approached the intersection, he was negligent in failing to anticipate the possibility that the truck would turn right onto M Street, failing to observe the truck sufficiently to ascertain whether the truck would do so and subsequently was commencing to do so, and failing to control the speed and direction of his bicycle in such fashion as to be able to avoid collision if the truck should turn right.

The outcome here is not controlled by our ruling in *Williams v. Anderson*, 485 A.2d 198 (D.C.1984). Our brief *per curiam* opinion there reveals that Williams, a bicyclist, was struck by a cab that made a right turn from the center lane striking the bicyclist who was proceeding in the same direction in the curb lane. This court reversed the trial court's order setting aside a verdict for Williams because of his contributory negligence. Several factors distinguish this case from *Williams*. In that case there was apparently no vehicle parked in the curb lane one or two car lengths above the intersection, nor was there mention of an acknowledgment by the bicyclist that he was not paying attention to the turning signals on the other vehicle and that he "didn't figure [the other driver] was going to make that turn." These factors enter prominently into our evaluation of appellant's conduct.

"Only in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law." *Tilghman v. Johnson,* 513 A.2d 1350, 1351 (D.C.1986). This is one such case. We are satisfied that the evidence before Judge Suda allowed of no other conclusion than that appellant failed to ride his bicycle with reasonable care for his own safety and that negligence on his part was a contributing proximate cause of the collision.

*Affirmed.*

SCHWELB, Associate Judge, concurring in part and dissenting in part:

Assessment of a collision between a motor vehicle and a bicycle can depend on one's perspective. To someone who perhaps used to ride a bike to school and still owns such a contraption, but who tends in middle age to rely most often on the marvels of the internal combustion engine, it may well appear that a cyclist pedalling away on a busy downtown street is intrinsically a nuisance and probably negligent just because he is there. The guy on the bike who is proceeding south on 19th Street at its intersection with M Street, N.W. with his motorized fellow-travellers on every side of him may, on the other hand, feel much like a minnow among sharks, or even among whales when a "Macho Diesel" trash truck is among those travelling southbound nearby. Perceptions aside, however, I cannot agree with my colleagues that the plaintiff cyclist in this case, despite gaping contradictions in his various accounts,[1] was shown to be contributorily negligent as a matter of law. Accordingly, I respectfully dissent from the affirmance of Judge Suda's order directing a verdict against the cyclist.[2]

---

similar testimony adduced in the first trial: "[P]laintiff offered no evidence that defendant failed to move as close to the curb lane as possible before he started his turn."

1. At his pretrial deposition, Mr. Washington testified that he did not see the trash truck until it hit him. His subsequent responses to inquiries as to where he was when he first saw the vehicle were unspecific and contradictory.

2. I agree with the majority that Judge Gardner did not abuse his discretion in granting the defendant a new trial following the first trial of the action. *Rich v. District of Columbia,* 410 A.2d 528, 535 (D.C.1979). As the court stated in *Slatton v. Martin K. Eby Construction Co., Ltd.,* 506 F.2d 505, 508 n. 4 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975):

In its review of the evidence when passing upon a motion for a new trial, the trial court

I

At the conclusion of the plaintiff's case at the second trial, the defense attorney told Judge Suda:

I submit to the Court that the evidence in this case today is substantially the same on liability as it was at the time this case was last tried. So, Your Honor has points and authorities, case law, and the reasoning of the trial judge, Judge Gardner, in the prior matter. A motion for directed verdict had been made in that case based substantially on the same facts.[3]

The motion to which counsel for the trash hauling company was alluding, however, had been decided adversely to his clients. When Judge Gardner had been confronted with what defense counsel described to Judge Suda as "substantially the same" evidence as to liability, he had denied a motion for judgment notwithstanding the verdict, stating in pertinent part as follows:

Intersection collisions nearly always present questions of fact. *Vernice Tilghman v. Mary T. Johnson*, [513 A.2d 1350] (D.C.1986); *Aqui v. Isaac*, 342 A.2d 370, 372 (D.C.1975). "The credibility of witnesses must be passed on, conflicting testimony must be weighed, and infer-

ences must be drawn." *Aqui v. Isaac, supra*, quoting *Shu v. Basinger*, 57 A.2d 295 (D.C.1948). The Court is satisfied that this was not a case where the evidence was so clear and undisputed that reasonable men could come to only one conclusion. Therefore, the case was properly submitted to the jury.[4]

Given defense counsel's acknowledgment that the facts at the two trials were essentially the same, Judge Suda might have done well (despite the silence of plaintiff's counsel on the subject) to accord some weight on his own initiative to Judge Gardner's earlier determination that there was sufficient evidence in plaintiff's favor to warrant submission of the case to the jury. Even assuming that this concession did not technically render applicable the doctrine of the law of the case—and I am not at all sure that such an assumption is sound—[5] trial judges of the same court should ordinarily follow the decisions of their colleagues as a matter of comity, and in order to promote consistency.[6] This is especially appropriate where similar questions arise at different stages of the same case. Moreover, as this court stated in *Rawlings v. Robbins*, 257 A.2d 486, 488 (D.C.1969):

We think it appropriate to observe, particularly in view of our overtaxed ju-

---

is not limited to viewing the evidence in the light most favorable to the prevailing party. It may weigh evidence, disbelieve witnesses, and grant a new trial even when there is substantial evidence to sustain the verdict. (Citations omitted.)

**3.** In his brief to this court, at p. 1, counsel likewise stated that "[i]t is also remarkable that the evidence adduced by Plaintiff was similar in all respects in both trials."

**4.** In fact, the defense case was, if anything, substantially stronger when Judge Gardner denied the defendant's motion for judgment notwithstanding the verdict than when Judge Suda ruled, because a disinterested observer had testified unfavorably to Washington at the first trial but had not yet been heard at the second.

**5.** In determining whether the doctrine of the "law of the case" applies, "the analysis focuses on whether the question initially decided is *substantially the same* as the issue being presented *and whether the court's first ruling was deemed to be final.*" *Gordon v. Raven Systems & Research, Inc.*, 462 A.2d 10, 12 (D.C.1983) (empha-

sis added). It is noteworthy that defense counsel in the present case used the term "substantially the same" in comparing the record as to liability developed at the first and second trials. It does not appear, however, that the doctrine of the law of the case was urged upon the trial court. *See D.D. v. M.T.*, 550 A.2d 37, 48 (D.C. 1988).

**6.** "Judges of the same district court customarily follow a previous decision of a brother [or sister] judge upon the same question except in unusual or exceptional circumstances." *Buna v. Pacific Far East Line, Inc.*, 441 F.Supp. 1360, 1365 (N.D.Cal.1977). "The rule that judges of coordinate jurisdiction sitting in the same court should not overrule each other on similar issues of law is inextricably woven into the warp and woof of the judicial fabric of this circuit." *In re Petition of Marko Terzich*, 153 F.Supp. 651, 653 (W.D.Pa.1957), *aff'd*, 256 F.2d 197 (3d Cir.), *cert. denied*, 358 U.S. 843, 79 S.Ct. 66, 3 L.Ed.2d 77 (1958). *See also In re Gregory M.*, 108 Daily Wash.L.Rptr. 1373, 1378–79 (Super.Ct.D.C.1980) (Superior Court judges should ordinarily follow each other's decisions).

dicial system, that the prudent procedure in cases such as this is to submit the issues to the jury. If a verdict is deemed by the court to be contrary to the evidence, judgment may be entered *non obstante veredicto*. Action by this court in the event of an appeal from such a judgment would not entail the trouble and expense of a new trial.

(Internal quotation marks and citations omitted).

In any event, aside from questions of judicial consistency and adherence to prudent procedures, I think that Judge Gardner ruled correctly at the first trial, and that direction of a verdict on essentially the same facts at the second trial was therefore inappropriate.

## II

My colleagues agree that, in considering the motion for a directed verdict, the trial judge was required to view the evidence in the light most favorable to the non-moving party. *District of Columbia v. Bethel*, 567 A.2d 1331, 1334 & n. 3 (D.C.1990); *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C. 1973). The only account of the accident which the jury heard at the second trial was the one provided by the cyclist, Kevin Washington. I do not think that a reasonable person must conclude from Mr. Washington's testimony that he (the cyclist) was at fault.

Mr. Washington testified that he was in the right lane, side by side with the trash truck, and travelling south in a straight line when the trash truck turned right from the middle lane and ran over the top of him. He related that he was crossing M Street, remaining in his own lane, when the truck made a "sharp turn" and struck him. He did not go around the car parked near

the intersection, nor did he pass the truck or cut in front of it or "roll in the lane that the trash truck was in." He expressly denied that the truck driver stopped for pedestrians before making his turn, and he did not think that the driver had turned on his directional signal.[7]

My colleagues appear to assume that the cyclist either passed the truck on the right or remained abreast of it for some time, thus preventing the driver from seeing him. Assuming that this scenario can be squared with Mr. Washington's testimony—and I am not at all sure that it can—it surely is not the most favorable inference to him that may reasonably be drawn from it.

## III

As Judge Gardner correctly observed, intersection collisions almost always present questions of fact concerning negligence and contributory negligence. *Tilghman v. Johnson*, 513 A.2d 1350 (D.C.1986). It is the office of the jury, not the judge, to make judgments concerning the evidence. *Aqui v. Isaac*, 342 A.2d 370 (D.C.1975). Only in exceptional cases, where the facts are undisputed and where but one reasonable inference can be drawn, is the trial court justified in holding that the presence or absence of negligence or contributory negligence has been established as a matter of law. *Carter v. Singleton*, 219 A.2d 114, 115 (D.C.1966). This is not such a case.

The basic thrust of Mr. Washington's testimony was that he was riding lawfully in the curb lane when the truck driver made an abrupt right turn from the middle lane, perhaps without signaling, and struck Mr. Washington, who was surely there to be seen. That was sufficient to warrant

---

**7.** I do not construe the testimony about whether the directional signal on the truck was activated quite as my colleagues read it. Mr. Washington initially testified that he did not see a turn signal, and that "I don't think that trash truck had his signals on." He acknowledged that he did not look to see whether the directional signal had been activated, and that he was not paying attention to the signal. *Id.* One way to read this recitation is to conclude that Mr.

Washington had no idea whether the blinker was blinking, and that what he thought about the matter was therefore irrelevant. Construed in the light most favorable to the plaintiff, however, I think that Mr. Washington's testimony as a whole could support the thesis that the driver probably did not turn on his signal, because Mr. Washington would have noticed it if it had been blinking.

submission of the case to the jury. *See Williams v. Anderson*, 485 A.2d 198 (D.C. 1984) (*per curiam*).

The majority's view of the case is based on the conception that the curb lane in which the cyclist was travelling was blocked because of the presence in that lane of a parked automobile. My colleagues appear to assume that the parked car occupied the entire curb lane, and that Mr. Washington therefore had to leave that lane and create his own lane between the car and the truck in order to pass the stationary vehicle. That perception explains their statement that "the bicyclist could not reasonably rely on an assumption that the truck driver would anticipate traffic in a lane [which] the truck driver would consider occupied by the parked car." Maj. op. at 546.

The requisite premise for this contention, however, is that there was no room in the curb lane both for the parked car and for the cyclist. If there was sufficient space for both, then the truck driver had no basis for supposing that the cyclist would not go forward in the curb lane. Rather, he was obliged to anticipate that the cyclist would do just that. The court may not legitimately take from the jury the question whether the cyclist was required to know, as the majority appears to suggest, that the truck driver would not bother to look, before making a right turn from the second lane, to be sure that there was no cyclist or other person in the curb lane whom he (the driver) might strike as he turned on to M Street.

Since, according to the cyclist's account, there was room for him in the right lane as he passed the parked car, he had the right to proceed in that lane, and the accompanying right to assume that if he did so, the truck driver would not make a right turn over the top of him, but would wait until he (the cyclist) was out of the way. In fact, a cyclist is generally supposed to ride as near to the right as practicable, *see* Hill, Bicycle Law & Practice, § 9.10, at 173–74 (1986), rather than to venture into the center lane to follow a sanitation truck. Mr. Washington was not contributorily negli-

gent when he did so and when he assumed that the truck driver would respect his right to do so.

In any event, if one credits Mr. Washington's account, the accident was plainly the truck driver's fault and not his own. Under the plaintiff's scenario, the driver should have checked to determine whether anyone was to his right, and ought to have stopped instead of running the cyclist over. Considering the evidence in the light most favorable to the plaintiff, a reasonable juror could conclude that the accident did not result from anything the cyclist did, but occurred because the driver "failed either to look at all or to look observantly and see what should have been plainly visible." *Singer v. Doyle*, 236 A.2d 436, 438 (D.C. 1967); *see also Jackson v. Schenick*, 174 A.2d 353, 355 (D.C.1961) ("a person must see what is reasonably there to be seen"); *Frager v. Pecot*, 327 A.2d 306, 307 (D.C. 1974) (*per curiam*) ("failure to see" doctrine applicable even to favored driver who has right of way). *See also Stockfisch v. Fox*, 275 Mich. 630, 632, 267 N.W. 754, 755 (1936) (driver may not rely on cyclist remaining a specific distance from the edge of the road); *Winter v. Perz*, 335 Mich. 575, 578, 56 N.W.2d 276, 278 (1953) (same); *Peckscamp v. McDowall*, 282 Minn. 439, 446, 165 N.W.2d 254, 259 (1969) (cyclist has legal right to be on highway and driver making right turn must keep proper lookout to be reasonably sure that right turn will not endanger other users of highway; directed verdict in driver's favor reversed). As the truck driver had an obligation to maintain a proper lookout, the cyclist had the right to assume that he (the driver) would do exactly that.

My colleagues also say that the cyclist was contributorily negligent in failing to anticipate that the truck driver would turn right, because he "didn't figure [the driver] was going to make that turn." A fair reading of the cyclist's testimony on that subject—and certainly the reading most favorable to Mr. Washington—was that he did not believe that the driver would make a sharp right turn *while he (the cyclist)*

*was travelling in the right lane.*[8] In light of the driver's obligation to maintain a proper lookout, as described in the cases cited above, this was an eminently reasonable expectation and cannot serve as the basis for ruling that contributory negligence was established as a matter of law.

Moreover, I know of no record support for the majority's assertion, maj. op. at 547, that Mr. Washington "fail[ed] to control the speed and direction of his bicycle in such fashion as to be able to avoid collision if the truck should turn right," and that this failure supported a directed verdict of contributory negligence. The happening of the accident alone does not establish that the cyclist did not act with reasonable care. *See Jones v. Safeway Stores, Inc.,* 314 A.2d 459, 460 (D.C.1974). There is, to my knowledge, no other evidence of failure on his part to control speed or direction.

Contributory negligence is an affirmative defense with respect to which the defendant has the burden of proof. *Singer, supra,* 236 A.2d at 438. To direct a verdict in favor of a party who has the burden of persuasion requires even more certainty than to direct one in favor of the party whose negligence must be proved by his adversary. Although I am not sure of the source of counsel's non-record information about what bicycle riders routinely do, I otherwise agree with the following passage in Appellant's brief in this court:

> Absent a specific regulation banning a bicyclist from riding in a curb lane with parked cars, it was a jury question as to whether appellant acted prudently under all the circumstances present here. In an urban environment where bicyclists routinely travel in curb lanes with parked cars and the municipal authorities have

not prohibited this practice, the lower court should not be allowed to hold it is negligent to do so as a matter of law. Simply stated, no court can create a new traffic regulation and then hold it negligent as a matter of law for a party to violate an ordinance of the court's own creation. Unfortunately, this is precisely what Judge Suda did in this instance by directing a verdict against Mr. Washington, who had no reason to believe he was doing anything improper in operating his bicycle in a curb lane with a parked car present. Since the other branches of the government have not prohibited this practice, it remains a jury question as to whether the common practice of bicyclists in this regard is prudent.

In *Williams v. Anderson, supra,* a case similar to the present one, this court reinstated a verdict in favor of the plaintiff where a cab driver who was making a right turn from the center lane struck a cyclist who, like Mr. Washington, was proceeding forward in the right lane. Reversing a decision by the trial judge, the court held that the question of contributory negligence was for the jury. Although *Williams* differs from the present case in that there was no indication in *Williams* that a car was parked in the curb lane, this distinction is not decisive.[9] Mr. Washington testified here that he remained in the curb lane while he was passing the parked automobile. If he did—and we must assume for purposes of a motion for a directed verdict that his testimony was correct—then any difference between the two cases largely evaporates.

For the foregoing reasons, the motion for a directed verdict should have been denied, the defense evidence should have been heard, and the case should have been

---

**8.** My colleagues imply, maj. op. at 546–547, that Mr. Washington assumed that the truck driver would not make a right turn *at all,* and apparently view such an assumption as compelling evidence of contributory negligence. That is not a fair reading of Mr. Washington's testimony. He stated that he did not think the driver would turn right "while I was right on the next building [sic] on the other side." Even assuming that ambiguity exists on that score—and I do not think it does—it must be resolved, in the context of a motion for directed verdict, in

favor of Mr. Washington as the non-moving party.

**9.** For reasons explained at p. 550, *supra, Williams* cannot be distinguished on the ground that Mr. Washington failed to anticipate the truck driver's right turn. If the evidence is viewed, as it must be, in the light most favorable to the plaintiff, the testimony on that issue falls far short of establishing contributory negligence as a matter of law.

submitted to the jury. Accordingly, I respectfully dissent from the affirmance of the directed verdict in the defendants' favor.