# SEAVERS *v.* LISNER.

MASTER AND SERVANT; NEGLIGENCE; LAST CLEAR CHANCE; ENGROSSING DUTY.

1. A workman employed in repairing elevator shafts, who was warned of the danger from moving elevators, and who, after working for four

hours, seeing the car descend and ascend a number of times, placed his head inside the elevator shaft with the moving pulleys and plungers in full view, was guilty of negligence which precludes his recovery for injuries sustained when the elevator struck him.

2. The doctrine of last clear chance does not apply in the case of an injury by a moving elevator, where the operator could not, by the exercise of reasonable care, have discerned the danger of the person injured.

3. The adjustment of a displaced brick in an elevator shaft is not such a pressing or engrossing duty as to entitle a workman who was injured in its performance, to go to the jury on the question of his negligence in placing his head within the shaft, in full view of the moving mechanism, where he was not in the employ of the defendant, who owned and operated the elevator, and where he had been warned not to put his arm or head in the shaft when the elevator was in motion.

No. 2552.   Submitted November 4, 1913.   Decided December 1, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, for defendant in an action to recover damages for personal injuries.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action in tort brought by plaintiff George A. Seavers, appellant here, in the supreme court of the District of Columbia to recover damages for injuries received while engaged in repair work in defendant's store, known as the Palais Royal, in the city of Washington.

It appears that defendant, some six months prior to the date of the accident, contracted with the Gormley & Poynton Company, building contractors, to make certain repairs upon his store building. The contracting company sublet the brickwork to Martin Foley & Son, bricklaying contractors. Plaintiff was employed by Foley, and, at the time of the accident, was working under the direction of Foley's foreman, one Stewart. The superintendent of Gormley & Poynton Company directed Stewart and plaintiff to work on certain brick walls to be erected in the basement of the building under the sides of

the elevator shafts. In this building there were four elevators, two operated in shafts immediately adjoining each other, then a space of about 10 feet, then two other elevators likewise operated in adjoining shafts. Plaintiff and Stewart had been working in the building for some days, and on October 20, 1911, they began working on the construction of the walls in question. The elevator cars operated in shafts from the basement floor, where plaintiff was working, to the top of the building, some four or five stories. Plaintiff was constructing a wall around the north side of one of these shafts. Stewart was doing similar work around the south side of one of the shafts, and at the opposite side of the space between the elevator shafts. In constructing the walls, they worked in a pit, about 8 or 10 feet in size, between the elevator shafts and below the basement floor of the building. Before the work was begun, carpenters, at their request, removed certain frame work from around the elevator shafts where the brick walls were to be constructed. The engineer of the Palais Royal was requested to stop operating the elevators, but he informed them that they could not be stopped; that he knew the place was dangerous, and that plaintiff and Stewart must be careful. The elevator cars on this day were running chiefly from the main floor of the building to the upper floors, but occasionally came down to the basement floor, where plaintiff and Stewart were working. To construct the brick wall, it was necessary to build it to a height of about 2 feet directly under and supporting a wooden beam 12 inches high. The wall had been built to within about 3 inches of the beam. The space between the beam and the elevator car, as it passed up and down, was about 3 inches. At this point in the construction of the wall, a brick was shifted slightly out of place, and plaintiff, leaning over the beam with his head inside of the elevator shaft, was adjusting the brick to place, when the car descended and struck his head, causing the injuries complained of.

It further appears that the elevator car in which the operator was working was inclosed from the floor up for a distance of about 4 feet by a solid metal casing, above which was a network

of wire, through which the operator could see.  The operator knew that plaintiff was working in the pit just outside of the elevator shaft.  No warning was given by him of the descent of the car at the time the plaintiff was injured.  At the conclusion of plaintiff's case, the court, upon motion, instructed the jury to return a verdict for defendant.  From this judgment plaintiff has appealed to this court.

*Mr. A. S. Worthington* and *Mr. Wharton E. Lester,* for the appellant:

Notwithstanding plaintiff's own negligence may have exposed him to the risk of injury, he may recover, if the defendant's negligence, after the defendant became aware of the plaintiff's danger, was directly responsible for the injury.  This whether defendant's agent either did or, by the use of reasonable diligence, could have seen him.  *Tolson* v. *Inland & S. Coasting Co.* 139 U. S. 270; *Bengurnga* v. *Brookland Heights R. Co.* 48 App. Div. 515; *Washington R. & E. Co.* v. *Cullember,* 40 Wash. L. Reg. 806; *O'Connor* v. *Union R. Co.* 73 N. Y. Supp. 606; *Smith* v. *Bailey,* 43 N. Y. Supp. 856; *Dipaolo* v. *Third Avenue R. Co.* 67 N. Y. Supp. 421; *McGrath* v. *Metropolitan Street R. Co.* 93 N. Y. Supp. —; *Hough* v. *Texas & P. R. Co.* 100 U. S. 213; *Staubley* v. *Potomac Electric Power Co.* 21 App. D. C. 161; *Bogan* v. *Carolina C. R. Co.* 124 N. C. 154; *Davies* v. *Mann,* 10 Mees. & W. 543; *Grand Trunk R. Co.* v. *Ives,* 144 U. S. —; *Texas & P. R. Co.* v. *Gentry,* 163 U. S. 368; *Washington & G. R. Co.* v. *Grant,* 11 App. D. C. 107; *O'Leary* v. *Haverhill,* 193 Mass. 339; *O'Connell* v. *Union R. Co.* 67 N. J. App. 99: *B. & O.* v. *Anderson,* 85 Fed. 416; *Thompson* v. *Southern P. R. Co.* 93 Fed. 385; *Breeze* v. *MacKinnon Mfg. Co.* 140 Mich. 370; *Donohue* v. *St. Louis etc. R. Co.* 91 Mo. 365.

2. The owners of elevators are held to the highest degree of care on account of the danger of injury to others resulting from the operation of the car.  *Munsey* v. *Webb,* 37 App. D. C. 185; *Fox* v. *Philadelphia,* 208 Pa. 128; *Mitchell* v. *Marker,* 62 Fed. 139; *Springer* v. *Ford,* 189 Ill. 430; *Western Electric Co.* v.

*Hanselmann,* 136 Fed. 564; *Southern B. L. Asso.* v. *Lawson,* 97 Tenn. 367; *Hughes* v. *Fagin,* 46 Mo. App. 37; *Davis* v. *Ohio Valley Trust Co.* 127 Ky. 800.

*Mr. Frank J. Hogan* and *Mr. Leon Tobriner,* for the appellee:

1. The doctrine of last clear chance is applicable only in cases where the defendant, after the plaintiff has by his negligence put himself in a position of danger, sees, or by the exercise of reasonable care should have seen, the plaintiff and his dangerous position, but nevertheless negligently injures him. *Washington R. & Electric Co.* v. *Cullember,* 40 Wash. L. Rep. 806; *Harten* v. *Brightwood R. Co.* 18 App. D. C. 260, 263; *Stearman* v. *B. & O. R. Co.* 6 App. D. C. 46; *Scott* v. *District of Columbia,* 27 App. D. C. 416; *Brown* v. *District of Columbia,* 29 App D. C. 273; *Cullen* v. *B. & P. R. R. Co.* 8 App. D. C. 74; *R. & D. R. R.* v. *Didzoneit,* 1 App. D. C. 489, and *Howes* v. *District of Columbia,* 2 App. D. C. 194.

2. Plaintiff was not entitled to recover for the injuries sustained. *Lynch* v. *Elektron Mfg. Co.* 195 N. Y. 171 (1909); *Hall H. & Co.* v. *Poole,* 94 Md. 171 (1901); *Ramsdell* v. *Jordan,* 168 Mass. 505 (1897); *Man* v. *Morse,* 3 Colo. App. 359; *Harmer* v. *Reed Apartment & Invest. Co.* 68 N. J. L. 334 (1902); *Simpson* v. *Gerken,* 45 N. Y. Supp. 1100; *Pelzel* v. *Schepp,* 83 App. Div. 444; *Guichard* v. *New,* 9 App. Div. 485; *Knapp* v. *Jones,* 50 Neb. 490; *Rood* v. *Lawrence Mfg. Co.* 155 Mass. 590; *Peake* v. *Buell,* 90 Wis. 508 (1895); *Kennedy* v. *Friederich,* 168 N. Y. 379; *Ballou* v. *Collamore,* 160 Mass. 246 (1893); *Rohrbacher* v. *Gillig,* 203 N. Y. 413; *Brenstein* v. *Mattson,* 10 Daly, 336; *Jossaers* v. *Walker,* 14 App. Div. 303; and *Taylor* v. *Carew Mfg. Co.* 143 Mass. 470.

*Mr. D. W. Baker* also for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is urged by counsel for plaintiff that the proximate cause

of the accident was the negligence of the operator in not giving notice of the descent of the elevator car. The place provided for plaintiff to work was in the pit outside of the elevator shaft. Large pulley wheels, which turned when the car was moving, were in full view inside of the shaft. A plunger, which ascended and descended with the movement of the car, was in the center of the shaft. The place was lighted with electricity sufficiently, at least, to enable plaintiff to perform his work. Nothing appears in the record from which the inference can be drawn that the operator was advised of the necessity of plaintiff projecting any portion of his body inside of the elevator shaft. Neither is it apparent that the operator could, from his position in the car, observe the position of plaintiff immediately before the accident occurred. The car was inclosed with a solid iron casing for a distance of 4 feet from the floor, which would obstruct any view of plaintiff from the car, since plaintiff's position was almost directly under the side of the car. The angle of vision was too acute to enable the operator to observe plaintiff through the network inclosing the car above the solid casing. Plaintiff not being in defendant's employ, defendant's liability is limited to the negligent operation or defective construction of the elevator. The accident was not the result of any defect in the elevator, and we are not convinced that it was due to the negligence of the operator.

We agree with the learned justice below that the contributory negligence of plaintiff was the proximate cause of the accident. In the full possession of his faculties, after working in the pit for a period of about four hours, seeing the car descend and ascend a number of times, warned of the danger inside of the shaft, and with the moving pulleys and plunger in full view, he recklessly placed himself in the position in which he was caught and injured. Assuming, for the sake of argument only, that defendant was guilty of negligence, the accident would then be the result of the concurring negligence of both parties, and consequently there could be no recovery.

The doctrine of the last clear chance, as applied in the railway cases cited, has no analogy to the present case. In the

operation of a railway train, the engineer or motorman is in a position from which he has full view of the track; hence the rule that, though a person may be negligently upon the track, if it is within the power of the engineer or motorman, by the exercise of reasonable care, to avert the accident, it is his duty to do so, and if he fails in that duty, and an accident occurs, the contributory negligence of the injured party will not furnish a valid defense. Here, as has been suggested, the operator was not in a position to observe, by the exercise of reasonable care, the danger to which plaintiff exposed himself. Hence, the contributory negligence of plaintiff, as shown by the testimony of himself and his witnesses, leaves no issue for the jury.

Counsel for plaintiff have cited cases to the point that where an employee is called upon to work in a position of danger, if, for a moment, while in that position, he becomes so absorbed in his duties as to be oblivious of the danger, and is injured, the question of his contributory negligence is one for the jury. In all of those cases, the employee was performing a duty assigned by the employer which required such immediate and instantaneous attention as forbade his observing the dangerous agency which caused the injury. In the leading case of *Northern P. R. Co.* v. *Everett*, 152 U. S. 107, 38 L. ed. 373, 14 Sup. Ct. Rep. 474, where a brakeman was injured while coupling a car which was making a flying switch, the court said: "It appeared that Everett was a young and inexperienced man; that this was his first service in attempting to couple a car with a projecting load; the duty he was expected to perform gave him no time to narrowly inspect the approaching car or to observe its condition. His attention was not called to the projecting timber until he was in the very act of making the coupling, and when his effort to avoid it was too late. He had first to throw the switch to receive the approaching car, and then run ahead and get ready to put the pin in the drawhead. It was shown that there was no pin in the drawhead of the stationary car, and he was obliged to pick one up and put it in place ready to make the coupling. These duties gave him no opportunity to closely scan the car that was in rapid motion behind

him. In such circumstances, when the whole transaction is the work of a moment, and when his duty calls upon him to act promptly, a man cannot be expected to act with circumspection. At all events, we think that, in view of the fact that the car was improperly loaded; that Everett was new and inexperienced in such work, and that he was required to perform the double duty of throwing the switch and making the coupling, the case was an appropriate one for submission to the jury. * * * It is not easy, in a subject of this kind, to lay down unbending rules, and conflicting cases can readily be found. But, without pursuing the subject further, we are satisfied that, in the present case, there was no conclusive evidence of a want of due care on the part of Everett in not observing the projecting timber while he was in the discharge of his duty, and while his attention was directed to the work in which he was engaged."

The cases cited are to the same effect, that, where the duty imposed upon the employee is such as to require his undivided attention in its immediate performance, and where the time is so short that proper attention to his duties may reasonably cause him to overlook the impending danger, the question of his contributory negligence should be submitted to the jury. In other words, if his duties are so important and pressing, and of such engrossing character, as to momentarily render him oblivious of the danger and incapable of exercising his information as to the existence of the dangerous instrumentality, it cannot be said, as matter of law, that he was guilty of negligence. In all such cases, however, it must appear that the instrumentality causing the injury was negligently maintained or operated by the employer or his agent.

As suggested by the supreme court in the case above cited, each case must turn upon its own facts in determining whether the question of the employee's negligence is one of law or of fact. None of the conditions essential to carry the cases cited to the jury are here present. Plaintiff was performing the ordinary work of a bricklayer. He was not in the employ of defendant, and hence not acting under his orders when he was injured. The work he was performing when injured required

no such haste or engrossing attention as to reasonably cause him to forget the dangerous position in which he had voluntarily placed himself. He had been warned by Stewart that it was dangerous to project his arm or head within the shaft when the car was in motion. For four hours he had observed the operation of the elevator. He testified that, at other times, when projecting his arm or head into the shaft, he had looked up to see if the car was descending. He was warned in this instance by the pulley wheels and plunger that the car was moving, and, with no duty that required such immediate attention inside of the shaft as to justify any risk, he negligently and thoughtlessly placed himself in a position to receive the injury. The judgment is affirmed, with costs.    *Affirmed.*