**DISTRICT OF COLUMBIA, Appellant,**

v.

**Mary C. BROWN, Appellee.**

**Nos. 88–319, 88–1636.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1990.
Decided April 3, 1991.

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at time the brief was filed, and Charles L. Reischel, Washington, D.C., Deputy Corp. Counsel, were on the brief, for appellant.

John F. Conroy, Washington, D.C., for appellee.

Before BELSON, STEADMAN and FARRELL, Associate Judges.

BELSON, Associate Judge:

Nineteen-year-old Dwight Covington, a 320–pound former football player, intentionally drove his left shoulder against an elevator door in a public housing project. The door gave way and he fell to the bottom of the elevator shaft. Tragically, he suffered serious injuries and died after declining blood transfusions for religious reasons. His mother, appellee Mary C. Brown, was awarded a $300,000 jury verdict against appellant District of Columbia for its negligence in failing to maintain a safe elevator in her ensuing wrongful death and survivor's action law suit. The District of Columbia contends that the trial court erred by failing to grant its motions for directed verdict because 1) Covington's intentional act of hitting the elevator door with his shoulder constituted contributory negligence as a matter of law; and 2) Covington's refusal of blood transfusions due

to his faith as a Jehovah's Witness while hospitalized for his injuries was an intervening cause of his death and that therefore the District should not be liable for his death as a matter of law. Because we conclude that Dwight Covington was contributorily negligent as a matter of law, we reverse.

## I.

The salient facts involved in this case are not in dispute. On March 7, 1982, Dwight Covington, a 320–pound six foot-three inch; former football player at Chamberlain High School in the District of Columbia, intentionally hit his left shoulder against an elevator door while on the third floor of a District of Columbia-owned Greenleaf Gardens public housing project located at 1200 Delaware Avenue, S.W. (hereinafter "the project"). Michael Gathers, a friend who accompanied Covington to the project the evening of March 7, 1982, witnessed Covington's accident. He testified at trial that there was a visible gap at the right side of the elevator door, big enough that· one could see the elevator as it arrived or could look down into the shaft. Covington "took a large step and hit the door and went straight through it." After Covington hit the right side of the elevator door, it yielded to the impact, allowing Covington to fall 40 feet to the bottom of the elevator shaft and to sustain injuries that included multiple fractures of his pelvis, left leg, and hip socket.

Approximately one week prior to hitting the elevator on March 7, 1982, Covington had propelled himself against an elevator door at 203 N Street, S.W., within the Greenleaf public housing project, while demonstrating a football move to his friend Michael Gathers. On that occasion the elevator door did not give way, yet Gathers warned Covington not to hit the elevator door in such a fashion because Gathers was concerned that Covington might knock the door down.

Plaintiff adduced evidence that if the elevator doors had been in conformance with applicable elevator regulations they would not have opened when subjected to the pressure exerted upon them by a contact of the type brought to bear by Covington.

Because we conclude that Covington's contributory negligence requires that the judgment be reversed, we will not state in detail the facts surrounding his hospital treatment and his refusal to accept blood transfusions due to his religious beliefs. Suffice it to say that after losing half of his blood, he was transferred to a medical facility in Chicago for the infusion of an alternative substance, but by then he was physically unable to undergo that procedure and died.

On February 13, 1983, Covington's mother and administratrix of his estate, appellee Mary C. Brown, sued the District of Columbia, among others,[1] under the D.C. Survival Act (D.C.Code § 12–101 et seq. (1989)) and the D.C. Wrongful Death Act (D.C.Code § 16–2701 et seq. (1989)), alleging, *inter alia*, that negligence in construction, maintenance, installation, and repair of the elevator hoistway door at the project, caused Covington's injuries and death. Brown advanced both a common law negligence theory and a statutory/regulatory theory at trial, alleging that the project elevator involved in Covington's accident failed to comply with the D.C. Elevator Code, 13A DCMR Elevator Code (1984). Following a six-day jury trial, the jury awarded Brown damages of $160,000 under the Survival Act and $140,000 under the Wrongful Death Act.

## II.

■ At the outset, we consider whether under the circumstances the District of Columbia could assert a traditional contributory negligence defense based upon a showing of a lack of ordinary care on the

---

1. Brown also sued Armor Elevator Company which had installed the elevator doors in 1977 and had maintained them in 1977–78. The trial court directed a verdict in its favor at the close of plaintiff's case. Brown also sued Warfield & Sanford, Inc., the company responsible for maintaining the elevator doors at the time of the accident. The jury found in favor of Warfield & Sanford.

part of decedent that was a proximate cause of his injuries, or instead the District had to show aggravated contributory negligence in order to prevail on that defense. Appellee Brown argues that the Elevator Code was intended to protect persons against the consequences of a lack of ordinary care and that therefore the District could prevail upon a defense of contributory negligence only by establishing that Covington's conduct amounted to aggravated or heightened negligence. We disagree with Brown's position.

In denying the District of Columbia's motions for a directed verdict, the trial court in this case determined that the question of whether Covington was contributorily negligent was for the jury. The jury was instructed on both the ordinary contributory negligence theory and a heightened standard of aggravated contributory negligence under the D.C. Elevator Code.[2] The jury was also instructed on assumption of the risk.

The trial judge left to the jury the question of whether the Elevator Code was a public safety regulation that would excuse ordinary contributory negligence but not aggravated contributory negligence (willful, wanton or reckless conduct). In our view, this was a question of law that the trial judge should have decided.

The District of Columbia joined in a request that the jury use a special interrogatory verdict form. The trial court declined to do so, and instead used a jury form that did not require the jury to indicate which type of contributory negligence defense it deemed applicable. The form simply contained blanks following references to the Survival Act and the Wrongful Death Act that the jury was to fill in if it found for plaintiff on either. Because of the general nature of the verdict form, it is impossible for us to know whether the jury decided to hold the District to the unduly high standard of aggravated negligence. In the final analysis, this uncertainty will not change the outcome of this appeal because we are satisfied that the proper standard of contributory negligence is lack of ordinary care, and that under that standard Covington was contributorily negligent as a matter of law.

The interrelationship between the Elevator Code and the defense of contributory negligence presents an issue of first impression in the District of Columbia. Our review of the legislative history of the Elevator Act of 1977 has suggested no general purpose of the Elevator Code to protect members of the public from their own negligence.[3] Unlike this court's interpretation of the legislative history in *Martin v. George Hyman Const. Co.*, 395 A.2d 63 (D.C.1978) in which we explained that the industrial safety statute embodied a conscious policy choice to protect workers from their own negligent acts to the end that employers would be liable for a negligently maintained workplace, our review of the Elevator Code reveals no such policy. *See* 13A DCMR Elevator Code (1984).[4]

---

**2.** The trial court instructed the jury that:
To act wrecklessly [sic], willfully or wantonly in Dwight Covington's circumstances in this case means to act in disregard of a known risk or risks so obvious that an individual must be taken to have been aware of it, and a risk so great as to make it highly probable that the harm which actually occurred would follow. It is usually accompanied by conscious indifference to the consequences of one's own actions.

**3.** In a portion of the Elevator Code not relevant to this appeal, however, reference was made to the fact that people were getting injured by riding on top of elevator cars rather than inside them; the portion of the Code dealing with emergency exits also addressed this question in order to deal with this practice of riding on top of the elevators. In that particular, the Elevator Code could be seen to protect people who engage in such activity, which is presumably negligent behavior, from the consequences of their own negligent acts.

**4.** The D.C.Code § 1–323(a) (1987) "authorized and directed" the D.C. Council "to make and publish such orders as may be necessary to regulate the construction, repair, and operation of all elevators within the District of Columbia, and prescribe such means of security as may be found necessary to protect life and limb." The D.C. Elevator Act of 1977, effective November 3, 1977 adopted the 394–page Elevator Code. The general introductory provision of the Elevator Code provides that "[t]he purposes of this Code shall be to ensure the practical safeguarding of persons and property." 13A DCMR § 100.2 (Apr. 1984).

■ Even if the structure or legislative history of the Elevator Code evinced such a policy, there would still be a significant question as to whether Dwight Covington could properly be considered part of the class of persons that the Code was designed to protect. *Cf. Martin, supra,* 395 A.2d at 71 n. 9 (court did not decide whether the aggravated contributory negligence standard for workplace injuries applied to non-wage earners). Covington frequented the public housing project to "hang out" with friends. He was more akin to a trespasser rather than a resident tenant or a tenant's guest at the housing project.[5] This project apparently had no doors to prevent non-residents from entering the premises. Doors put up to replace the ones torn down were apparently removed repeatedly by vandals; this presented a persistent problem for the District. In addition, Covington did not use the elevator on March 7, 1982 as a passenger. Gathers testified that the elevator was out of service that evening. Instead, he and Covington used the stairs to explore each floor of the project looking for acquaintances.

It is true, of course, that one of the purposes of the Elevator Code is to ensure the safety of the general public. 13A DCMR Elevator Code, General Provisions, § 100.2. This purpose, however, is not inconsistent with requiring members of the public to use due care when they are using elevators. In *Scoggins v. Jude,* 419 A.2d 999 (D.C.1980) and *Banks v. District of Columbia,* 551 A.2d 1304 (D.C.1988), we held that it was consistent with the Housing Code to require tenants to exercise due care in their activities as tenants, even in the face of noncompliance with certain provisions of that Code. As we determined in *Banks* that the purpose of the Housing Code was not to protect persons from their own negligence, we also conclude that the Elevator Code does not insulate persons from the legal consequences of their failure to exercise ordinary care. We conclude that the trial court erred when it failed to rule to that effect and instead left it to the jury to determine whether a purpose of the Elevator Code is to protect members of the public from their failure to exercise ordinary care for their own safety.

### III.

■ Having determined that ordinary contributory negligence rather than aggravated contributory negligence is available as a defense, we consider the District's argument that the trial court should have granted its motions for directed verdict or, alternatively, its post-trial motion for judgment notwithstanding the verdict because Dwight Covington's act of "vandalism" in deliberately striking the elevator door with his shoulder was contributorily negligent as a matter of law. Brown counters the District's argument by stating that it was for the jury to determine whether Covington was contributorily negligent. Brown points out that she adduced the testimony of Mr. Huntt, an elevator expert, and a demonstration by a football player in full uniform. She argues that her evidence was sufficient to establish that the elevator doors were not in compliance with the Elevator Code at the time Covington hit them and that they would not have opened on contact had they been in compliance. She concludes it would be unreasonable for Covington to have foreseen that his contact with the doors would lead to his fall.

The District of Columbia must carry a heavy burden in order to establish that the trial court erred in denying its motions for directed verdict and its motion for judgment notwithstanding the verdict. The standards for granting JNOVs are quite rigorous: "A judgment notwithstanding the verdict is proper only in 'extreme' cases, in which no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party." *Oxendine v. Merrell Dow Pharmaceuticals, Inc.,* 506 A.2d 1100, 1103 (D.C.1986). A motion for a directed verdict should be granted when "the evidence, taken in the light most fa-

---

**5.** The jury was instructed concerning the varied duties owed to trespassers, licensees, etc. We cannot determine which standard the jury applied to Covington because the verdict form did not include interrogatories as to Covington's status.

388

vorable to plaintiff, establishes the contributory negligence of plaintiff's intestate so clearly that no other reasonable inference or conclusion may be drawn therefrom." S. SPEISER, RECOVERY FOR WRONGFUL DEATH 2d, § 5:1 at 578 (1975); see also Marshall v. District of Columbia, 391 A.2d 1374, 1379 (D.C.1978).

Generally, contributory negligence[6] will bar recovery on a claim for negligence in the District of Columbia. Martin, supra, 395 A.2d at 69; see also Severs v. Lisner, 41 App.D.C. 183, 191 (1913) (worker's contributory negligence in placing his head inside elevator shaft after being warned of the dangers in doing so prevented worker's recovery). Contributory negligence may bar a tenant's or guest's recovery even if the structure is found to violate the Housing Code "since requiring users of leased premises to act reasonably is in no way inconsistent with the policy underlying the housing regulations." Banks, supra, 551 A.2d at 1308; see also Scoggins, supra, 419 A.2d at 1005.

"It is well settled in this jurisdiction that negligence and contributory negligence are usually questions of fact and become questions of law only where there is but one reasonable inference which may be drawn from undisputed facts." Aqui v. Isaac, 342 A.2d 370, 371–72 (D.C.1975); see also Tilghman v. Johnson, 513 A.2d 1350, 1351 (D.C.1986). We consider that the facts in this case allow for only one reasonable conclusion. It is clear and unambiguous that Covington was contributorily negligent as a matter of law in intentionally hitting the elevator hoistway door. See

Washington v. A & H Garcias Trash Hauling Co., 584 A.2d 544, 546–47 (D.C. 1990); Allison v. Snelling & Snelling, Inc., 425 Pa. 519, 229 A.2d 861 (1967) (action under wrongful death and survivor's action barred due to decedent's negligence in failing to determine whether elevator was there before stepping into elevator shaft). Covington's friend, Michael Gathers, acknowledged that Covington "lunged at [the elevator door] and hit it hard and did it deliberately." Before Covington did so, there was a visible gap at the right side of the elevator door, large enough to permit one to see the elevator arrive or to look into the shaft. Gathers had warned Covington against such conduct about a week previously. Covington's actions clearly violated the objective reasonableness standard of the RESTATEMENT (SECOND) OF TORTS, § 466(b), supra, in light of the obvious danger presented by this particular elevator and by qualities of elevators generally. See PROSSER AND KEETON ON TORTS, § 34 (5th ed. 1984) (elevators are among those instrumentalities known to be dangerous).[7] Consequently, the trial court erred in failing to grant the District of Columbia's motions for directed verdict and motion for judgment notwithstanding the verdict.

IV.

The District of Columbia's final argument is that Dwight Covington's death was caused by the "deliberate and intentional intervening act of refusing a blood transfusion" rather than by the negligence of the District of Columbia. The District asserts that it would be proper for this court to

6. This court has adopted the RESTATEMENT (SECOND) OF TORTS' definition of contributory negligence:
The plaintiff's contributory negligence may be either (a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or (b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm.
Banks, supra, 551 A.2d at 1308 n. 12 (quoting RESTATEMENT (SECOND) OF TORTS § 466 (1965)). Generally, one who "depart[s] from the standard of care that is to be expected of the reason-

able person" in that person's position is guilty of contributory negligence. Sinai v. Polinger Co., 498 A.2d 520, 524 (D.C.1985). Contributory negligence is evaluated under "an objective standard of reasonable care." Id.

7. See also Annotation, Liability for Injury Caused by Fall of Person Into Shaft, or By Abrupt Drop, Sudden Movement, or Stopping Between Floors, of Automatic Passenger Elevator, 64 A.L. R.3d 950, § 17 Contributory Negligence (1975 & Supp.1989); Annotation, Contributory Negligence of One Stepping or Falling into Shaft of Nonautomatic Elevator, 34 A.L.R.2d 1366 (1954 & Supp.1989).

vacate the judgment under the Wrongful Death Act and direct the trial court to dismiss this claim. Because we conclude that appellee's decedent was contributorily negligent as a matter of law, we need not reach this issue on appeal.

*Reversed.*

STEADMAN, Associate Judge, concurring in part and dissenting in part:

I am in accord with the majority's analysis in Part II that ordinary contributory negligence would bar recovery here. I cannot agree, however, that the District was entitled to a judgment notwithstanding the verdict (or a directed verdict, to which the same legal standard is applied) on the ground that the victim here was contributorily negligent as a matter of law.

As the majority points out, a judgment notwithstanding the verdict is proper only in "extreme cases," where the evidence can be read by any reasonable person in only one light. Furthermore, and importantly, the party seeking the JNOV here is the party bearing the burden of proof, which a defendant has in attempting to establish a contributory negligence claim. *Singer v. Doyle,* 236 A.2d 436, 438. (D.C.1967).[1] Thus, it is not a question simply of determining whether the evidence presented, if believed, is sufficient, in its most favorable light, to permit a reasonable person to find that that burden had been met, a task difficult enough in itself. *See, e.g., Levy v. Schnabel Foundation Co.,* 584 A.2d 1251, 1255 (D.C.1991) (JNOV in favor of defendant improper where expert evidence of standard of care was "sufficient, albeit barely so," to require submission of case to the jury). Rather, it is the even more exacting question[2] of asserting that the evidence presented not only must be be-

lieved but also, even if taken in the light most favorable to the other party, will admit of only one conclusion to any reasonable mind: that the burden has been met. *See, e.g., Tilghman v. Johnson,* 513 A.2d 1350, 1351 (D.C.1986) ("only in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law"); *Carter v. Singleton,* 219 A.2d 114, 115 (D.C. 1966); *see* 5A MOORE'S FEDERAL PRACTICE ¶ 50.02[1] at 50–32 (2d ed. 1990) and cases cited (in motion for directed verdict in favor of party with burden of proof, court must test evidence "not for its sufficiency, but rather for its overwhelming effect").

Finally, this is not a situation of an appellate court affirming the granting of a JNOV by a trial court who was present at presentation of the evidence and could itself weigh the strength of the evidence as it appeared to one who was there.[3] Quite the contrary, we are rejecting the view not only of the jury but of the trial court as expressly set forth in the record. In ruling against the grant of a directed verdict, the trial court noted:

[T]hat's not to say that a person who comes in contact with the door deliberately is necessarily as a matter of law acting in a negligent manner. There are a lot of intentional contacts with that door that would not demonstrate any contributory negligence on the part of the person.

How many times have each of us come in contact with an elevator door intentionally and deliberately? How many times have we done that? How many times have we banged on an elevator door when it didn't come or when it was being held or when it wouldn't close or et cet-

---

**1.** The defendant claiming contributory negligence has essentially the same burden as the plaintiff in proving negligence, with the difference that the standard of care for contributory negligence is the degree of care a reasonable person would take for his or her *own* safety. RESTATEMENT (SECOND) OF TORTS § 466, comment f (1965). *See District of Columbia v. Mitchell,* 533 A.2d 629, 639 (D.C.1987).

**2.** But not an impossible one. *See, e.g., Washington v. A & H Garcias Trash Hauling Co.,* 584 A.2d 544 (D.C.1990) (contributory negligence as matter of law where bicyclist in right parking lane was hit by truck lawfully turning right from center lane).

**3.** This was the situation, for example, in *Washington v. A & H Garcias Trash Hauling Co, supra* note 2, 584 A.2d 544, where we affirmed the trial court's grant of a JNOV.

era? That's human nature. We all have done it. . . .

It would not defeat that requirement [of the Elevator Code] to require, however, that a person who did come in contact with the elevator door be acting in a reasonable manner in light of all the circumstances as they existed at the time in question, and whether a person was or was not is a matter, in my judgment in this case—I can't say that the decedent was or was not. It all—it all depends on evaluation of the facts and circumstances.

Mr. Gathers, according to Mr. Gathers, Mr. Covington didn't make that much of a contact with the elevator. It was a matter that was rather incidental as far as Mr. Gathers was concerned. It did not appear to be that much and it's a question for the jury to determine to what extent he was negligent and to what extent the door was able to withstand the amount of pressure in question, the extent to which it did, the extent

to which it didn't. All of these are factual questions, it seems to me, that have to be resolved by the jury.

This does not appear to be an impermissible view of the record. There was only one eyewitness to the event, Michael Gathers, who testified.[4] Gathers said that Covington "took a large step and hit the door and went straight through it," later indicating that Covington hit the door with his shoulder above the middle and on the right side of the door. Efforts to get Gathers to admit that Covington hit the door more than once,[5] or had done so to demonstrate a football maneuver or from a three-point stance were all unsuccessful.[6] The issue of the gap and its nature and significance was subsequently thoroughly aired, even assuming that the victim here had a duty to observe it.[7] As the trial court had observed early in the trial, the issue of contributory negligence was a "question of degree."[8]

On this record as I understand it, and given the stringent legal standards adumb-

---

4. Four youngsters, including Gathers and Covington, were talking in front of the elevator. Andre Thomas, another of the group, also testified but he did not see Covington make contact with the door but simply heard a "boom" and Covington was gone.

   By the reference to Covington's status on the property, I do not understand the majority to be suggesting that a more stringent test should apply on the issue of contributory negligence. Gathers testified that for five or six years the building had been a regular gathering place for youths in the neighborhood and had no doors to impede ingress or egress. Gathers further testified that he knew people living on the floor where the incident occurred.

5. As the majority indicates, Covington had hit an elevator door on an occasion some days previously where Gathers was also present. On that occasion, Covington had hit the door much harder.

6. He did answer "yes" to the final *question* in cross-examination: "But there is no doubt in your mind that when Mr. Covington struck that door he lunged at it and hit it hard and he did it deliberately, isn't that true?" But how hard is "hard", and it is difficult to support a JNOV on a single reply to a question phrased by opposing counsel. Likewise, experience might suggest that relatively common impacts could make the "loud noise" or "boom" that was mentioned. Nor does the testimony relative to the experiment by the expert seem to establish with total

clarity the nature of the impact. Our obligation to give "the advantage of every fair and reasonable intendment that the evidence can justify," *Guardian Ins. Co. v. Anacostia Chrysler–Plymouth, Inc.*, 320 A.2d 315, 317 (D.C.1974), applies equally to situations, as here, where the person bearing the burden of proof seeks a JNOV in its favor; that is, such inferences are to be drawn against the moving party.

7. There was some indication that some small gap may be a permissible characteristic of elevators.

8. The court made the point in denying the motion for the directed verdict following opening statements:

   THE COURT: Well, Mr. Rashad [the District's counsel], suppose someone is standing on the first floor of a six floor building and has reason to believe that someone is holding the door—holding the elevator on the second floor and bangs on the elevator door with their hand intentionally and volitionally and deliberately, perhaps also somewhat angrily, certainly frustrated, and the door caves in and they go falling down below.

   Is such a person automatically and as a matter of law precluded from recovering on the theory of negligence if some negligence is shown on the part of the building owner in maintaining that elevator? ... I mean what you are saying is a question of degree, is that right?

rated above, I cannot find error in the trial court's denial of the JNOV.[9]

---

**9.** Given the majority's contrary conclusion, there is no occasion for me to examine the District's claim that the refusal to permit a blood transfusion bars recovery. Apart from this issue, I would reverse and remand for a new trial to deal with the error discussed in part II of the majority opinion.